[Cite as *State v. Edwards*, 2017-Ohio-7231.]

STATE OF OHIO  )    IN THE COURT OF APPEALS
        )ss:    NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT )

STATE OF OHIO        C.A. No.  28164

   Appellee

   v.          APPEAL FROM JUDGMENT
             ENTERED IN THE
SPIRLIN EDWARDS      COURT OF COMMON PLEAS
             COUNTY OF SUMMIT, OHIO
   Appellant      CASE No.  CR 2015 05 1527

DECISION AND JOURNAL ENTRY

Dated: August 16, 2017

SCHAFER, Judge.

{¶1} Defendant-Appellant, Spirlin Edwards, appeals his convictions in the Summit County Court of Common Pleas. For the reasons that follow, we affirm.

I.

{¶2} Edwards and S.K. met in October 2012 and began dating shortly thereafter. Edwards and S.K.'s family got along well during their relationship. Consequently, Edwards had contact phone numbers for S.K.'s family including her brother and father, B.K. The relationship ended on January 30, 2015. On that day, S.K. went to Edwards' apartment to retrieve some personal items. When S.K. told Edwards she no longer wanted to be in a relationship with him, Edwards shoved her and she fell. No report was made of the incident.

{¶3} Thereafter, S.K. and B.K. began receiving threatening text messages and emails from unknown senders. S.K. changed her phone number on two separate occasions in an attempt to avoid the messages. Edwards called S.K.'s place of employment in Independence, Ohio,

multiple times, identifying himself as a police officer in order to successfully obtain S.K.'s new phone number. S.K. reported the calls to Officer Murphy of the Independence Police Department as well as an incident where she discovered her tires were slashed. Edwards subsequently pleaded guilty to charges of impersonating a police officer.

{¶4} S.K. and B.K. continued to receive threatening messages and reported the threats to Officer Bell of the City of Stow Police Department. Edwards subsequently pleaded guilty to telecommunication harassment in the Stow Municipal Court.

{¶5} Nonetheless, S.K. and B.K. continued to receive threatening messages. The messages, however, came from unfamiliar or unidentified phone numbers and email addresses and the senders identified themselves as "Valerie," "Andrew Peters," "John Wick," "Felix Franse," and "DeQuinn Jones." Many of the threatening messages included death threats toward S.K., B.K., and the rest of their family. Through a joint investigation, Officer Bell and Officer Murphy were able to link the threatening messages to Edwards' IP address. In May 2015, S.K. was granted a civil protection order against Edwards.

{¶6} On May 8, 2015, a call was made from Edwards' mother's phone number to the Stow-Munroe Falls High School ("Stow High School"). The caller told the Stow High School receptionist that there was a bomb in the school and that it was "going to go boom." Consequently, Stow High School was evacuated and searched. No bomb was found.

{¶7} The Summit County Grand Jury subsequently indicted Edwards on the following six charges: (I) inducing panic in violation of R.C. 2917.31(A)(1)/(C)(5), a felony of the second degree; (II) telecommunications harassment in violation of R.C. 2917.21 (A)(4), a felony of the fifth degree; (III) telecommunications harassment in violation of R.C. 2917.21 (A)(3), a felony of the fifth degree; (IV) aggravated menacing in violation of R.C. 2903.21, a misdemeanor of

the first degree; (V) aggravated menacing in violation of R.C. 2903.21, a misdemeanor of the first degree; and (VI) violating a protection order in violation of R.C. 2919.27, a misdemeanor of the first degree. Edwards pleaded not guilty and the matter proceeded through the pretrial process.

{¶8} Following trial, a jury returned "guilty" verdicts as to Counts I, II, III, IV, and V. However, the jury returned a "not guilty" verdict as to Count VI. For sentencing purposes, the trial court merged Count II into Count I. The trial court then sentenced Edwards as follows: Count I, inducing panic: a definite term of four years; Count III, telecommunications harassment: a definite term of eleven months; Count IV, aggravated menacing: a definite and local term of six months; and Count V, aggravated menacing: a definite and local term of six months. The trial court ordered Edward to serve the sentences imposed on Counts I and III consecutively with each other, but concurrently with Counts IV and V, for a total sentence of four years and eleven months incarceration.

{¶9} Edwards filed this timely appeal, raising six assignments of error for our review.

II.

**Assignment of Error I**

**Spirlin Edwards' due process was violated by the denial of a mistrial due to false testimony, contrary to the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Sections 1, 10, and 16 of the Ohio Constitution.**

{¶10} In his first assignment of error, Edwards contends that the trial court erred by denying his motion for a mistrial when the State knowingly presented false and misleading testimony that was unduly prejudicial. We disagree.

{¶11} Pursuant to Crim.R. 33(A)(1), a trial court may grant a new trial upon motion of a defendant when his substantial rights are materially affected by an "[i]rregularity in the

proceedings, or in any order or ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial." A trial court may also grant such a motion when the "[m]isconduct of the jury, prosecuting attorney, or the witnesses for the state" materially affects the defendant's substantial rights. Crim.R. 33(A)(2).

{¶12} "Great deference is afforded to a trial court's decision regarding a motion for mistrial[.]" (Internal citations omitted.) *State v. Howes*, 9th Dist. Summit No. 24665, 2010–Ohio–421, ¶ 11. We recognize that the trial judge is in the best position to determine whether the declaration of a mistrial is warranted under the circumstances as they have arisen in the courtroom. *State v. Kyle*, 9th Dist. Summit No. 24655, 2010–Ohio–4456, ¶ 25, citing *State v. Glover*, 35 Ohio St.3d 18, 19 (1988); *State v. Ahmed*, 103 Ohio St.3d 27, 2004–Ohio–4190, ¶ 92. Accordingly, this Court "will not second-guess such a determination absent an abuse of discretion." *Ahmed* at ¶ 92. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶13} "'Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible.'" *State v. Witcher*, 9th Dist. Summit No. 26111, 2012–Ohio–4141, ¶ 32, quoting *State v. Franklin*, 62 Ohio St.3d 118, 127 (1991). "The essential inquiry on a motion for mistrial is whether the substantial rights of the accused are adversely affected." *Howes* at ¶ 11, quoting *Wadsworth v. Damberger*, 9th Dist. Medina No. 3024-M, 2000 WL 1226620, *2 (Aug. 30, 2000). In determining whether a defendant was deprived of a fair trial, a court must determine whether, absent the error or irregularity, "the jury would have found the appellant

guilty beyond a reasonable doubt." *Columbus v. Aleshire*, 187 Ohio App.3d 660, 2010-Ohio-2773, ¶ 42 (10th Dist.), citing *State v. Maurer*, 15 Ohio St.3d 239, 267 (1984). To determine whether the alleged misconduct resulted in prejudice, a court must consider (1) the nature of the error, (2) whether an objection was made, (3) whether the trial court provided corrective instructions, and (4) the strength of the evidence against the defendant. *Id.* at ¶ 42, citing *State v. Tyler*, 10th Dist. Franklin No. 05AP–989, 2006–Ohio–6896, ¶ 20.

{¶14} "The Supreme Court of Ohio has limited the instances when a judgment may be reversed on grounds of prosecutorial misconduct." *State v. Knight,* 9th Dist. Lorain No. 03CA008239, 2004–Ohio–1227, ¶ 6, citing *State v. Lott,* 51 Ohio St.3d 160, 166 (1990). "The analysis of cases alleging prosecutorial misconduct focuses on the fairness of the trial and not the culpability of the prosecutor." *Id.* "Accordingly, a judgment may only be reversed for prosecutorial misconduct when the improper conduct deprives the defendant of a fair trial." *Id.* at ¶ 6, citing *State v. Carter,* 72 Ohio St.3d 545, 557 (1995).

{¶15} In this case, the State called a Time Warner Cable Supervisor for Theft of Service as a witness. During that testimony, the State sought to authenticate certain phone records as well as introduce testimony concerning the inability to spoof a particular type of telephone line. Edwards's trial counsel objected to the testimony, arguing that the Time Warner supervisor was not qualified to testify on the subject of spoofing. The trial court initially overruled Edwards's objection, noting that the witness was "a supervisor in the department that investigates these things."

{¶16} However, based upon testimony elicited during cross-examination, the trial court subsequently determined that the Time Warner supervisor was indeed not qualified to testify on the issue and that his testimony on direct examination had been hearsay. The trial court then

ordered the testimony to be stricken and a jury instruction was given as to the same. Edwards later moved for a mistrial, arguing that a jury instruction to disregard the supervisor's testimony was insufficient. In denying Edwards's motion, the trial court stated that Edwards' trial counsel's cross-examination of the Time Warner supervisor "was so withering" that the trial court did not trust that "the jury really believes that the [supervisor] knows what he was talking about on the technical issues."

{¶17} After a thorough review of Edwards' cross-examination of the supervisor, we determine that the trial court did not abuse its discretion when it denied Edwards' motion for mistrial. Specifically, we agree with the trial court's determination that the following exchange between Edwards' trial counsel and the Time Warner supervisor regarding landlines was indeed "withering:"

Q: You call this a landline but, in fact, it's actually a voice over IP, isn't it?

A: Either/or, yes.

Q: Well, it's not an either/or. A landline connects to a hard wire in the wall that goes up the telephone wires that are in the ground or on the telephone pole?

A: Technically speaking to your point, yes.

Q: Well, these are technical matters, are they not?

A: Okay

Q: Yes or no?

A: Yes.

Q: Okay. So, when you say a landline, that's not what this is, is it?

A: From your standpoint, no.

Q: No, from your standpoint. Time Warner is providing them voice over IP telephone service?

A: Correct.

Q: And that IP stands for the Internet, doesn't it?

A: Yes.

Q: So, if the Internet goes down, the phone is out?

A: Correct.

Q: If someone crashes into a telephone pole outside their house, your phone service still works?

A: Correct.

Q: So, it's not accurate to call this a landline?

A: Correct.

Trial counsel then questioned the supervisor about connection latency in the following exchange:

Q: Each call has a connection latency associated?

A: Okay.

Q: And the numbers associated with the call that you want to refer to, this time-out, still has a value there in the connection latency column, isn't that right?

A: Yes.

Q: What is connection latency?

A: I don't know that.

* * *

Q: Your testimony today is based upon what someone else did with a whole bunch of other somebodies. Is that right?

A: Yes

Q: And you're here testifying about a technical aspect of a voice over IP telephone service, and you don't even know what connection latency means. Is that right?

A: That's correct.

Q: What does IP mean?

A: IP, I don't know what it stands for.

Trial counsel then questioned the supervisor about his training in the following exchange:

Q: And you're telling us that you have all this training and this technical savvy, and you don't even know what IP stands for?

A: I didn't say I was technical savvy. I said in our training, we're all trained with some aspect of each technical background and our marketing department in our business. It doesn't say we're experts. I never said I was an expert. I said we're all trained in those different capacities. We all have some knowledge, in order to investigate throughout our entire company.

After that exchange, trial counsel then questioned the supervisor about his technical knowledge on spoofing as follows:

Q: So, in fairness, how – do you even know how spoofing works?

A: I'm not an expert.

Q: Is that a yes or no?

A: I have some history of dealing with it, but no.

{¶18} Based upon the foregoing, we conclude that the trial court did not abuse its discretion when it denied Edwards' motion for mistrial.

## Assignment of Error II

**Spirlin Edwards' due process and confrontation rights were violated by an unqualified witness authenticating business records, contrary to the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article 1, 10, and 16 of the Ohio Constitution.**

{¶19} In his second assignment of error, Edwards contends that the trial court erred and abused its discretion when it allowed an unqualified witness to authenticate phone records relevant to Count I, inducing panic, and Count II, telecommunications harassment. We disagree.

{¶20} The Sixth Amendment to the United States Constitution preserves the right of a criminal defendant "to be confronted with the witnesses against him." However, "the Confrontation Clause applies only to testimonial statements." *State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, ¶ 59. A statement is testimonial if it was given with the "primary purpose of creating an out-of-court substitute for trial testimony." *Ohio v. Clark*, 576 U.S. ___ , 135 S.Ct. 2173, 2183 (2015), quoting *Michigan v. Bryant*, 562 U.S. 344, 358 (2011).

{¶21} The Supreme Court of Ohio has stated that business records "are not 'testimonial in nature because they are prepared in the ordinary course of regularly conducted business and are "by their nature" not prepared for litigation.'" *State v. Craig*, 110 Ohio St.3d 306, 2006-Ohio-4571, ¶ 82, quoting *People v. Durio*, 794 N.Y.S.2d 863, 867 (2005). Evid.R. 803(6) governs the admissibility of such business records. With regard to this rule, the Supreme Court of Ohio has expounded the following:

> To qualify for admission under Rule 803(6), a business record must manifest four essential elements: (i) the record must be one regularly recorded in a regularly conducted activity; (ii) it must have been entered by a person with knowledge of the act, event or condition; (iii) it must have been recorded at or near the time of the transaction; and (iv) a foundation must be laid by the "custodian" of the record or by some "other qualified witness."

*State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, ¶ 171, quoting Weissenberger, *Ohio Evidence Treatise* 600, Section 803.73 (2007). "A trial court has broad discretion to admit a business record into evidence pursuant to Evid.R. 803(6), and an appellate court will not disturb a trial court's decision unless the trial court has abused its discretion." *State v. Baker*, 9th Dist. Summit No. 21414, 2003-Ohio-4637, ¶ 9.

{¶22} Relevant to Counts I and II, the State sought to admit telephone records from AT&T to show that a specific telephone number, later identified as belonging to the Stow-Munroe Falls Board of Education, received two telephone calls from Edwards' mother's phone

number around the time of the bomb threat. Although the docket entry shows that a subpoena was issued to AT&T, the subpoena is not in the record. In order to authenticate the records, the trial court allowed the State to present testimony from a witness employed as an assistant sales manager at AT&T Mobility's Akron-Fairlawn location. During his testimony, the sales manager stated that his "position is to coach the sales reps into having the same behaviors [he] had when [he] was in their position." He also stated that AT&T keeps certain records in the regular course of business, that the information is stored electronically, and that he could look up and print documents associated with a specific customer. When asked if he could identify a record the State sought to publish to the jury, he stated the document was "subscriber information on a wire line account." Included in the document was a record of call logs that the sales manager recognized as being recorded and kept in the electronic data records of AT&T.

{¶23} When the State attempted to publish the records to the jury, Edwards objected, arguing that the State had not established a foundation sufficient to publish to the jury. The trial court then allowed the State to ask additional questions in order to lay "more foundation" as to the sales manager's qualifications. During this questioning, the State asked the sales manager if he had access to the records at issue or if he was able to get caller records in his position. The sales manager replied that he did not have the authority to look through client records, but that he was able to review the documents before testifying. However, he did state that he was aware that the documents were "official documents" or "real documents of AT&T." The sales manager further stated that in order to get documents in such detail, "especially if it's from a date that far back," there "would have to be a subpoena or a request from law enforcement for that information."

{¶24} After the State's additional questions, Edwards again objected. At that time, the trial court allowed Edwards to cross-examine the sales manager out of order "on the issue of his qualifications as custodian of the records for AT&T." Upon cross-examination, the sales manager stated that he had not retrieved the records himself. Rather, AT&T's legal department had provided them to him. When Edwards' trial counsel asked the sales manager, "[a]nd this is not anything that's commonly * * * or regularly kept within your store or within your job description, isn't that correct?", the sales manager replied, "Correct. Although the trial court noted Edwards' trial counsel's continued objection, the court found the sales manager was qualified to authenticate the records and to testify as to their contents.

{¶25} This Court has stated, "[t]he witness whose testimony establishes the foundation for a business record need not have personal knowledge of the exact circumstances of preparation and production of the document." *Baker*, 2003-Ohio-4637 at ¶ 11, citing Evid.R. 803(6). "However, the witness must 'demonstrate that he or she is sufficiently familiar with the operation of the business and with the circumstances of the preparation, maintenance, and retrieval of the record in order to reasonably testify on the basis of this knowledge that the record is what it purports to be, and was made in the ordinary course of business.'" *Id.*, quoting *Keeva J. Kekst Architects, Inc. v. George Dev. Group*, 8th Dist. Cuyahoga No. 70835, 1997 WL 253171, *5 (May 15, 1997).

{¶26} Nonetheless, we need not decide whether the sales manager was qualified to authenticate the records at issue because, even assuming he was not qualified and that the trial court erred by admitting his testimony, a review of the record shows that the trial court's alleged error was harmless beyond a reasonable doubt. *See State v. Hood*, 135 Ohio St.3d 137, 2012-Ohio-6208, ¶ 43; *see also State v. Garcia*, 9th Dist. Summit Nos. 27810, 27811, 2016-Ohio-

4667, ¶ 61. A Constitutional error is harmless beyond a reasonable doubt "'if the remaining evidence, standing alone, constitutes overwhelming proof of [the] defendant's guilt.'" (Alterations sic.) *Hood* at ¶ 43, quoting *State v. Williams*, 6 Ohio St.3d 281 (1983), paragraph six of the syllabus.

{¶27} In this case, the State offered the sales manager's testimony to show that specific telephone numbers, later identified as belonging to the Stow-Munroe Falls Board of Education and Stow High School, received two phone calls from another specific telephone number, later identified as Edwards' mother's phone number, at a specific time. Absent this information, the State was still able to provide the jury with alternative phone records from Edwards' mother's telephone provider showing two calls were placed from Edwards' mother's house at the time of the bomb threat.[1] The first call was made to the Stow-Munroe Falls Board of Education at 10:55 a.m. and lasted 12 seconds. The second call was made to Stow High School at 10:56 a.m. and lasted 19 seconds. The receptionist at Stow High School testified she had received the threatening phone call between 10:55 a.m. and 11:00 a.m. She also stated that based on the tone and pitch of the caller's voice, she believed the caller was a male in his late twenties. Edwards' mother testified that Edwards had been staying with her for about a week prior to the date of the threatening phone call and was at her home the day on the day of the call. She further stated that she did not place the call to Stow High School and that to the best of her knowledge, neither did Edwards' brother.

---

[1] We note that although Edwards' trial counsel objected to the admission of Edwards' mother's telephone records, he does not challenge their admission on appeal.

**{¶28}** Accordingly, assuming without deciding that the trial court erred by admitting the sales manager's testimony, we conclude that such error was harmless beyond a reasonable doubt. Therefore, Edwards' second assignment of error is overruled.

### Assignment of Error III

**Spirlin Edwards' due process and confrontation rights were violated by the admission of hearsay evidence from unauthenticated records, contrary to the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article 1, Sections 1, 10, and 16 of the Ohio Constitution.**

**{¶29}** In his third assignment of error, Edwards contends that the trial court erred by allowing testimonial hearsay evidence concerning unauthenticated and unadmitted internet records relevant to Count III, telecommunications harassment, Count IV, aggravated menacing, and Count V, aggravated menacing. We disagree.

**{¶30}** As stated above, the Sixth Amendment to the United States Constitution preserves the right of a criminal defendant "to be confronted with the witnesses against him." However, "the Confrontation Clause applies only to testimonial statements." *Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, at ¶ 59. A statement is testimonial if it was given with the "primary purpose of creating an out-of-court substitute for trial testimony." *Clark*, 135 S.Ct. at 2183, quoting *Bryant*, 562 U.S. at 358 (2011).

**{¶31}** The Supreme Court of Ohio has stated that business records "are not 'testimonial in nature because they are prepared in the ordinary course of regularly conducted business and are "by their nature" not prepared for litigation.'" *Craig*, 110 Ohio St.3d 306, 2006-Ohio-4571, at ¶ 82, quoting *Durio*, 794 N.Y.S.2d at 867 (2005). Evid.R. 803(6) governs the admissibility of such business records. With regard to the rule, the Supreme Court of Ohio has expounded the following:

> To qualify for admission under Rule 803(6), a business record must manifest four essential elements: (i) the record must be one regularly recorded in a regularly conducted activity; (ii) it must have been entered by a person with knowledge of the act, event or condition; (iii) it must have been recorded at or near the time of the transaction; and (iv) a foundation must be laid by the "custodian" of the record or by some "other qualified witness."

*Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, at ¶ 171, quoting Weissenberger, *Ohio Evidence Treatise* 600, Section 803.73 (2007). "A trial court has broad discretion to admit a business record into evidence pursuant to Evid.R. 803(6), and an appellate court will not disturb a trial court's decision unless the trial court has abused its discretion." *Baker*, 2003-Ohio-4637, at ¶ 11.

{¶32} Relevant to Counts III, IV, and V, the State sought to admit testimony from Officer Murphy of the Independence Police Department, S.K., B.K., and Officer Bell of the Stow Police Department about unadmitted business records linking Edwards to an IP address used to send harassing messages to S.K. and B.K. Officer Murphy testified that he first came into contact with Edwards when investigating property damage (four slashed tires) to S.K.'s vehicle while it was parked at her place of employment in Independence, Ohio. Although Edwards was named as a suspect, no charges were ever filed. Later, when multiple phone calls were made to S.K.'s place of employment wherein the caller identified himself as a police officer in order to get S.K.'s phone number, the Independence police department began another investigation.

{¶33} During that investigation, Officer Murphy retained the phone records from S.K.'s place of employment as well as Edwards' phone records. Officer Murphy testified that from those records he was able to ascertain that Edwards' phone number appeared on the incoming records of S.K.'s place of employment and that number appeared on Edwards outgoing records. Concurrent with that investigation, S.K. and B.K. continued to send Officer Murphy information about threatening contacts they received via email and text messages. A number of the messages referenced the damage to S.K.'s car. As such, Officer Murphy believed if he could determine

who was sending the messages about the slashed tires, he might be able to charge that person.

Officer Murphy described his ensuing investigation as follows:

> So, both those numbers, I was able to – I Googled those numbers and it came back to a company called level 3 Communications on both of those numbers. Sent a subpoena to Level 3 Communications on both of those numbers. They said, we leased that number to a textPlus app.
>
> At that point, we sent two separate subpoenas to textPlus, who said, here is the information on that number, which came back with that John Wick e-mail one, and then there was a Felix Fanse e-mail on another. Also, an IP address is captured when that textPlus is signed up.
>
> That IP address was run. That IP address comes back to WOW Cable. Subpoena was sent to WOW Cable, which came back that he owned that IP address. Spirlin Edwards owned that IP address, and those e-mails were used to sign-up for that account.

{¶34} On appeal, Edwards claims that the trial court committed plain error in allowing Officer Murphy's testimony because it was "testimonial hearsay that should have been excluded due to the lack of authentication." As Edwards did not object to Officer Murphy's testimony, he has forfeited all but plain error. *See State v. Kelley*, 2d Dist. Clark No. 2011 CA 37, 2012-Ohio-1095, ¶ 57.

{¶35} Plain error may only be invoked where the following three elements exist:

> First, there must be an error, i.e., a deviation from the legal rule. * * * Second, the error must be plain. To be "plain" within the meaning of Crim.R. 52(B), an error must be an "obvious" defect in the trial proceedings. * * * Third, the error must have affected "substantial rights" * * * [and] affected the outcome of the trial.

(Internal citations omitted.) *State v. Barnes*, 94 Ohio St.3d 21, 22, (2002). Nonetheless, plain error "is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

**{¶36}** Even assuming that Edwards can show the first two elements exist, he is unable to show that he was prejudiced. In this case, S.K. testified prior to Officer Murphy, stating that she received threatening messages from persons identifying themselves as "John Wick," "Felix Fanse," "Dequinn Jones," "Valerie," and "Andrew Peters." She reported the threats to Officer Murphy of the Independence Police Department and Officer Bell of the Stow Police Department. She explained her previous relationship with Edwards to the officers and her suspicion that Edwards was behind the threatening messages. Then, *upon cross-examination*, Edwards' trial counsel elicited a statement from S.K. that she was granted a civil protection order against Edwards due to the threatening messages and police records that linked those messages to an IP address at Edwards' North Olmsted address.

**{¶37}** Since Edwards first elicited testimony from S.K. during cross-examination, any error in the admission of that evidence was invited error. *See Ahmed*, 103 Ohio St.3d 27, 2004-Ohio-4190, at ¶ 75. "The doctrine of invited error holds that a litigant may not 'take advantage of an error which he himself invited or induced.'" *State v. Campbell*, 90 Ohio St.3d 320, 324 (2000), quoting *Hal Artz Lincoln-Mercury, Inc. v. Ford Motor Co.*, 28 Ohio St.3d 20 (1986), paragraph one of the syllabus. Accordingly, the doctrine precludes Edwards from asserting as error on appeal the admittance of S.K.'s testimony elicited during cross-examination. As such, we conclude that Edwards is not able to show he was prejudiced by the testimony of Officer Murphy since it is merely cumulative of S.K.'s testimony.

**{¶38}** B.K. and Officer Bell also testified about how they were able to link the threatening messages to Edwards' IP address through the unadmitted unauthenticated records. B.K. stated that he was eventually able to determine where the messages were coming from with some help from Officer Bell and that together they were able to identify Edwards' number as the

source of the threatening calls by going through phone records. Upon objection, the trial court allowed B.K. to "answer from his understanding."

{¶39} Officer Bell testified that he first became acquainted with S.K. and B.K. when B.K. called the Stow Police Department to report that his daughter's tires had been slashed in Independence, Ohio, because B.K. wanted them "to be aware of any problems that might follow him home." Approximately two weeks later, Officer Bell was dispatched to their residence for a report of telecommunications harassment. That evening, Officer Bell was able to ascertain that Edwards was contacting S.K. through a white pages application ("app") S.K. had installed on her phone. That app showed several phone calls from Edwards to S.K. At that time he also learned that Officer Murphy was conducting a parallel investigation in Independence.

{¶40} Officer Bell then contacted Officer Murphy to inquire about the status of his investigation and learned that Officer Murphy had completed subpoenas for information on Edwards' apartment phone and "had obtained a lot of information based off of that subpoena." Officer Bell testified over objection that through a joint investigation with Officer Murphy, he was able to learn that Edwards had created an account through textPlus under the name of Felix Fanse by providing the contact email of johnwick34@yahoo.com. Additionally, Officer Bell learned that "a subpoena to WOW [Cable] revealed that all [of] this information returned to the IP address – the router number used by the – that local computer to actually call the Internet, if you will – and the phone number and address for Spirlin Edwards." Upon objection to this testimony, the trial court noted that the question posed to Officer Bell was in reference to the results of a joint investigation.

{¶41} Although Edwards' trial counsel did object to B.K.'s and Officer Bell's testimony regarding how they were able to link the threatening messages to Edwards' IP address through

the unadmitted unauthenticated records, we need not decide whether their testimony was testimonial hearsay. Even assuming that the trial court erred by admitting this testimony, a review of the record shows that the trial court's error was harmless beyond a reasonable doubt. *See Hood*, 135 Ohio St.3d 137, 2012-Ohio-6208, at ¶ 43.

{¶42} In this case, we have already concluded that admission of testimony regarding how the threatening text messages were linked to Edwards' IP address was not error. Accordingly, any additional testimony on that subject was cumulative and harmless beyond a reasonable doubt. *See State v. Williams*, 38 Ohio St.3d 346, 350 (1988) (the erroneous admission of hearsay, cumulative to the testimony of other witnesses at trial, constitutes harmless error); *State v. Hernon*, 9th Dist. Medina No. 3081-M, 2001 WL 276348, *4 (March 21, 2001) (noting that this Court has recognized that error in admitting testimony may be harmless beyond a reasonable doubt if it is cumulative).

{¶43} Therefore, Edwards' third assignment of error is overruled.

### Assignment of Error IV

**Spirlin Edwards' right to effective assistance of counsel was denied, contrary to the Sixth Amendment to the [United States] Constitution and Article 1, Sections 1, 10, [and] 16 of the Ohio Constitution.**

{¶44} In his fourth assignment of error, Edwards contends that his trial counsel was ineffective when he failed to move for a dismissal of the charges due to the State's failure to prove venue for Counts III, IV, and V. We disagree.

{¶45} In order to prevail on a claim of ineffective assistance of counsel, Edwards "must establish (1) that his counsel's performance was deficient to the extent that 'counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment' and (2) that but for his counsel's deficient performance the result of the trial would have been different." *State v. Velez*,

9th Dist. Lorain No.13CA010518, 2015-Ohio-642, ¶ 18, quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This court need not address both prongs of the *Strickland* test if it should find Edwards failed to prove either prong. *State v. Ray*, 9th Dist. Summit No. 22459, 2005-Ohio-4941, ¶ 10. A trial counsel's performance will not be deemed ineffective unless it falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), at paragraph two of the syllabus. Further, there exists a strong presumption of the adequacy of counsel's performance and that counsel's actions were sound trial tactics. *State v. Hoehn*, 9th Dist. Medina No. 03CA0076-M, 2004-Ohio-1419, ¶ 45. Moreover, "debatable trial tactics do not give rise to a claim of ineffective assistance of counsel." *Id.*, citing *State v. Clayton*, 62 Ohio St.2d 45, 49 (1980).

{¶46} R.C. 2901.12 governs venue in criminal cases. That statute provides in relevant part:

> When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, the offender may be tried for all of those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred. Without limitation on the evidence that may be used to establish the course of criminal conduct, any of the following is prima-facie evidence of a course of criminal conduct:
>
> (1) The offenses involved the same victim, or victims of the same type or from the same group.
>
> * * *
>
> (3) The offenses were committed as part of the same transaction or chain of events, or in furtherance of the same purpose or objective.

R.C. 2901.12(H).

{¶47} In this case, B.K. specifically stated that he received most of the threatening text messages while at home in Stow, Summit County, Ohio. B.K. also testified that S.K. was his daughter and that she lives at home with him. *See* R.C. 2901.12(H)(1). B.K. stated that one of

the threatening text messages he received explicitly stated that the sender was going to "gut" his daughter right in front of him and that he received additional messages threatening to kill her, his wife, and his son. S.K. testified that she also received a number of messages threatening to kill her and warning her that she was going to die. Both B.K. and S.K. received threatening messages through the textNow application and from someone identifying himself as "DeQuinn." *See* R.C. 2901.12(H)(3). As such, we conclude there was sufficient evidence to establish that venue was proper in the Summit County Court of Common Pleas.

{¶48} Therefore, we determine that Edwards' trial counsel was not ineffective for failing to move for dismissal of Counts III, IV, and V based on a failure of the State to prove venue. Accordingly, Edwards' fourth assignment of error is overruled.

## Assignment of Error V

**Spirlin Edwards' convictions were not supported by sufficient evidence, contrary to the due process clause of the [Fifth] and [Fourteenth] Amendments to the [United States] Constitution and Article 1, Sections 1, 10, [and] 16 of the Ohio Constitution.**

{¶49} In his fifth assignment of error, Edwards argues his convictions were not supported by sufficient evidence. We disagree.

{¶50} Initially, this Court notes that with the exception of a venue challenge on Counts III, IV, and V, Edwards does not contend that the evidence presented at trial was insufficient to support his convictions. Rather, Edwards contends that evidence presented by the State was admitted improperly and, absent that improper evidence, there was insufficient evidence to support his convictions. Nonetheless, the Supreme Court of Ohio has emphasized "that the interest in the administration of justice dictates that the appellate court review the issue of sufficiency in consideration of all evidence presented by the State in its case in chief, whether such evidence was properly admitted or not." *State v. Dixon*, 9th Dist. Medina Nos. 11CA0065-

M, 11CA0087-M, 2012-Ohio-4428, ¶ 18, citing *State v. Brewer*, 121 Ohio St.3d 202, 2009-Ohio-593, ¶ 18. Accordingly, Edwards has failed to develop an argument that the evidence admitted at trial was insufficient and we decline to do so for him. *See* App.R. 16(A)(7).

**{¶51}** Additionally, we have already addressed Edwards' argument as to the sufficiency of the evidence as it pertains to the issue of venue in Counts III, IV, and V in our disposition of his fourth assignment of error and decline to do so again here. Therefore, Edwards' fifth assignment of error is overruled.

### Assignment of Error VI

**The trial court erred in imposing consecutive sentences in violation of the due process clause of the Fifth Amendment of the [United States] Constitution and Article 1, Sections 1, 10, and 16 of the Ohio Constitution.**

**{¶52}** In his final assignment of error, Edwards contends that the trial court erred when it failed to find any specific statutory factors to support the imposition of consecutive sentences. We disagree.

**{¶53}** In reviewing a felony sentence, "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion." R.C. 2953.08(G)(2). "[A]n appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence" that: (1) "the record does not support the trial court's findings under relevant statutes," or (2) "the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016–Ohio–1002, ¶ 1. Clear and convincing evidence is that "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

**{¶54}** R.C. 2929.14(C)(4) states:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms

consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to [R.C.] 2929.16, 2929.17, or 2929.18 * * * , or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

The Supreme Court of Ohio has held that, "[i]n order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings." *State v. Bonnell,* 140 Ohio St.3d 209, 2014–Ohio–3177, syllabus. "However, a word-for-word recitation of the language of the statute is not required, and as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the records contains evidence to support the findings, consecutive sentences should be upheld." *Id.* at ¶ 29.

**{¶55}** On appeal, Edwards argues that although the trial court did make findings as to the general requirements of R.C. 2929.14(C)(4), it did not discuss any of the additional required findings under subsection (a), (b), or (c) at the sentencing hearing. Edwards does not argue that any findings made by the trial court were unsupported by the evidence or that the sentencing

entry failed to incorporate the required findings. As such, Edwards contends that "the trial court's entry of sentence conflicted with its findings at the sentencing hearing."

{¶56} During the sentencing hearing, but prior to imposing sentence, the trial court addressed Edwards and stated:

> [B]egining a year ago, February of 2015, you got convicted for telecommunication harassment after you broke up with your girlfriend. You got convicted for impersonating a police officer to find her identity. You got convicted for either domestic violence or disorderly conduct. And now you've been convicted of these felony offenses. And something terrible has gone wrong, and the Court has to address that.

The trial court proceeded to advise Edwards that a report from the Psycho-Diagnostic Clinic recommended counseling. However, the trial court then found that it could not "manage" Edwards in the community because he was "still too much of a threat to the community." However, the trial court disagreed with the State that eight years was an appropriate sentence, noting that Edwards had not accepted responsibility for his actions. Then, after imposing sentence, the trial court stated that it was imposing consecutive sentences "based on the severity of the crime, based on the effect on the public, and based on the need to protect the community from further acts."

{¶57} Although "this Court encourages trial courts to refer to the language of the statute when making findings pursuant to R.C. 2929.14(C), after reviewing the sentencing transcript in light of the language of the statute," we are able to discern that the trial court in this case "'engaged in the correct analysis' and made the requisite findings." *State v. Snyder*, 9th Dist. Summit No. 28109, 2016-Ohio-7881, ¶ 21, citing *Bonnell* at ¶ 29, 37. Accordingly, we conclude that the trial court made the requisite findings under R.C. 2929.14(C)(4) at the sentencing hearing. *See* R.C. 2929.14(C)(4)(c).

{¶58} Therefore, Edwards' sixth assignment of error is overruled.

III.

**{¶59}** Edwards' assignments of error are overruled. Accordingly, the judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

HENSAL, P. J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

JEREMY A. VEILLETTE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.