[Cite as *State v. Stevens*, 2023-Ohio-2153.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

v.

ROBIN STEVENS, JR.

    Appellant

C.A. No.     30336

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR 19 10 3512

DECISION AND JOURNAL ENTRY

Dated: June 28, 2023

STEVENSON, Judge.

**{¶1}** Defendant-Appellant Robin Stevens, Jr. appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms.

I.

**{¶2}** Mr. Stevens was indicted by a grand jury on one count of rape in violation of R.C. 2907.02, a felony of the first degree; one count of attempted rape in violation of R.C. 2923.02 and R.C. 2907.02, a felony of the first degree; and two counts of gross sexual imposition, in violation of R.C. 2907.05, felonies of the third degree. The charges stemmed from a June 2019 incident at Mr. Stevens's home.

**{¶3}** The 14-year-old victim, D.G., testified at trial that in 2019, when she was 11 years old, she spent the night with her siblings at Mr. Stevens's home. D.G.'s mother testified that Mr. Stevens is the father of her youngest two children and that D.G. spent June 9, 2019, at Mr. Stevens's home along with her siblings.

{¶4}     D.G. testified that Mr. Stevens "carried me to his bed and then like - - he like started playing with my butt and my boobs and stuff.  And then he had pulled down my pants and started playing with my vagina."  D.G. testified that Mr. Stevens inserted his finger into her vagina.  D.G. also testified that Mr. Stevens "pulled down his pants and like it didn't go in, but like it was sliding across I guess."  When asked what part of the body "it" was, D.G. testified that she was referring to Mr. Stevens's penis.

{¶5}     According to D.G., she was in Mr. Stevens's bed when she awoke the next morning.  D.G. testified that when she awoke, Mr. Stevens was "touching me again, like playing with my butt and boobs and stuff."  D.G. testified that Mr. Stevens "tried to put his penis inside of me and it didn't go in."

{¶6}     D.G's aunt picked her up from Mr. Stevens's house that morning.  Aunt and mother took D.G. to the hospital.

{¶7}     A social worker interviewed D.G. at Akron Children's Hospital's Risk Evaluation Center ("CARE") on June 9, 2019.  The social worker testified that D.G. said that Mr. Stevens touched her in his daughter's room and in his bed.  Social worker explained that trauma can impact a victim's ability to put things in chronological order and affect her ability to remember.

{¶8}     A doctor testified as to D.G.'s medical records from CARE.  The medical records included D.G.'s report of vaginal digital penetration and the method of evidence collection for the sexual assault kit. The doctor testified that D.G. reported that the assailant's penis contacted her vagina, but "[n]o vaginal penetration with penis occurred."

{¶9}     A detective testified that, on June 10, 2019, he was assigned to investigate the incident involving D.G.  The detective testified that a sexual assault evidence collection kit, also known as a rape kit, was performed and a DNA analysis was done.  The detective explained that

he did not interview D.G. because a forensic interview with a licensed social worker had been conducted at CARE.

{¶10} A forensic scientist testified regarding the submitted rape kit from D.G. The forensic scientist testified that D.G.'s vaginal swabs were positive for phosphatase activity, which is found in large quantities with semen and is a positive test for semen, and that Mr. Stevens could not be excluded as a contributor. D.G.'s perianal swabs were negative for acid phosphatase. Mr. Stevens's DNA could not be excluded from the sperm fraction collected from D.G.'s vaginal swabs and underwear. The forensic scientist testified that the collected "male DNA profile was consistent with Robin Stevens, Jr."

{¶11} The defense called friend A.C. and then live-in girlfriend, B.M. ("Girlfriend") as witnesses. A.C. testified that she picked up Mr. Stevens's children from a pool party and drove them back to Mr. Stevens's house. A.C. testified that she stayed at Mr. Stevens's house for "[m]aybe like two hours, three hours" after the children were sent to bed.

{¶12} Girlfriend testified that, when she arrived home at midnight on the night at issue, Mr. Stevens was inebriated and the children were upstairs. Girlfriend testified that she went to sleep with Mr. Stevens, who fell right asleep, and that she did not believe that Mr. Stevens got up during the night.

{¶13} Mr. Stevens testified at trial. Mr. Stevens testified that he went to bed with Girlfriend on the night in question. Mr. Stevens denied all D.G.'s allegations.

{¶14} The jury found Mr. Stevens guilty of all counts in the indictment. Mr. Stevens appeals this judgment of conviction raising three assignments of error for our review.

I.

## ASSIGNMENT OF ERROR ONE

**THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR A MISTRIAL BASED ON PROSECUTORIAL MISCONDUCT[.]**

{¶15} Mr. Stevens argues in his first assignment of error that the trial court erred in denying his motion for a mistrial based on his allegations of prosecutorial misconduct. We disagree.

{¶16} "Great deference is afforded to a trial court's decision regarding a motion for mistrial * * *." *State v. McKinney*, 9th Dist. Summit No. 24430, 2009-Ohio-2225, ¶ 20. This Court has recognized "that the trial judge is in the best position to determine whether the declaration of a mistrial is warranted under the circumstances as they have arisen in the courtroom." *State v. Edwards*, 9th Dist. Summit No. 28164, 2017-Ohio-7231, ¶ 12. Accordingly, this Court will not second-guess the trial court's determination absent an abuse of discretion. *State v. Ahmed*, 103 Ohio St.3d 27, 2004-Ohio-4190, ¶ 92. *See also State v. Kyle*, 9th Dist. Summit No. 24655, 2010-Ohio-4456, at ¶ 25; *State v. Horne*, 9th Dist. Summit No. 25238, 2011-Ohio-1901, ¶ 18.

{¶17} An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶18} "Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." *State v. Franklin*, 62 Ohio St.3d 118, 127 (1991). "The essential inquiry on a motion for mistrial is whether the substantial rights of the accused are adversely affected."

*Wadsworth v. Damberger*, 9th Dist. Medina No. 3024-M, 2000 WL 1226620, *2 (Aug. 30, 2000). "In determining whether a defendant was deprived of a fair trial, a court must determine whether, absent the error or irregularity, 'the jury would have found the appellant guilty beyond a reasonable doubt.'" *Edwards*, 9th Dist. Summit No. 28164, 2017-Ohio-7231, at ¶ 13, quoting *Columbus v. Aleshire*, 187 Ohio App.3d 660, 2010-Ohio-2773, ¶ 42 (10th Dist.), citing *State v. Maurer*, 15 Ohio St.3d 239, 267 (1984). "To determine whether the alleged misconduct resulted in prejudice, a court must consider (1) the nature of the error, (2) whether an objection was made, (3) whether the trial court provided corrective instructions, and (4) the strength of the evidence against the defendant." *Edwards* at ¶ 13, citing *Aleshire* at ¶ 42.

{¶19} In support of his first assignment of error, Mr. Stevens cites portions of the State's cross-examination of Girlfriend. The record establishes that the State asked Girlfriend whether she was "aware that evidence has been presented in this trial that Mr. Stevens' sperm or semen was found in the vagina" of D.G. Girlfriend replied that she was not aware. Defense counsel objected and the trial court instructed the State to rephrase the question. The State then asked Girlfriend whether she was "aware of evidence that Mr. Stevens' sperm is in the vagina" of D.G. Girlfriend again replied that she was not aware.

{¶20} The State then asked Girlfriend whether she had "an explanation for that?" Defense counsel objected "to the form and mischaracterization of the evidence" and asked that "it be stricken from the record" and that the court "instruct the jury to disregard that question." The court sustained the objection and a sidebar discussion, outside of the jury's hearing, was held.

{¶21} During the sidebar discussion, defense counsel emphasized that the semen "was found in the vaginal area" rather than inside the vagina. Defense counsel asked for a mistrial, which was denied.

**{¶22}** The State offered to "rephrase the question to say [the semen] was found in her [D.G.'s] vaginal area." An assistant co-prosecutor noted the doctor's testimony "as to how the vaginal swab is taken and that characterization was not just external."

**{¶23}** The State then asked Girlfriend, "Ma'am, evidence has been presented that Robin Stevens' semen was found in the area of [D.G.'s] vagina?" Defense counsel objected, arguing that "[t]here was never any testimony that semen was found. The only thing that was testified to, based on the evidence presented, was a sperm fraction. That is a big difference." The court sustained the objection and asked the State to rephrase the question. The State then asked Girlfriend, "Ma'am, evidence was presented in this trial of sperm found near [D.G.'s] vagina and that sperm belonged to Robin Stevens. Can you explain that?" Girlfriend replied, "I don't know."

**{¶24}** With respect to closing arguments, Mr. Stevens argues that the State mischaracterized the biological evidence and that this mischaracterization "is extremely prejudicial." Mr. Stevens does not cite any portions of the record to support his argument that the State mischaracterized the biological evidence in closing arguments.

**{¶25}** As previously set forth, a trial court's decision denying a motion for a mistrial is reviewed for an abuse of discretion. *Ahmed*, 103 Ohio St.3d 27, 2004-Ohio-4190, at ¶ 92. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore*, 5 Ohio St.3d at 219.

**{¶26}** The record establishes that, during the cross-examination of Girlfriend, the trial court ordered stricken from the record, and ordered the jury to disregard, the State's questions and the answers regarding Mr. Stevens's sperm being found in D.G.'s vagina and whether the Girlfriend had an explanation for this finding. The State rephrased the question and Girlfriend was asked about evidence as to Mr. Stevens's semen being "found in the area of [D.G.'s] vagina."

Defense counsel objected to the use of the word "semen" and argued that only a "sperm fraction" was found. The trial court sustained the objection and the State rephrased the question. The State then asked Girlfriend about Mr. Stevens's sperm being found near D.G.'s vagina. There was no objection to this question.

{¶27} After reviewing the record, this Court does not find that the trial court's decision to deny Mr. Stevens's motion for a mistrial during the state's cross-examination of Girlfriend was unreasonable or arbitrary. The State's question as to Mr. Stevens's sperm being found in D.G.'s vagina was stricken and the jury was ordered to disregard the question. Mr. Stevens's objection as to semen being found in the area of D.G.'s vagina was sustained.

{¶28} "'A jury is presumed to follow the instructions, including curative instructions, given it by a trial judge.'" *State v. Simpson*, 9th Dist. Lorain No. 11CA010138, 2012-Ohio-3195, ¶ 37, quoting *State v. Garner*, 74 Ohio St.3d 49, 59 (1995). Mr. Stevens directs us to no evidence in the record that the jury disregarded the court's instructions, and his belief that the State's questioning of Girlfriend was somehow responsible for the jury verdict is pure speculation.

{¶29} As to the State's alleged improper remarks in closing arguments, Mr. Stevens's brief does not comply with the appellate rules and we decline to address the merits of this argument. App.R. 16(A)(7) provides that "[t]he appellant shall include in [his] brief * * * [a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." *See also State v. Franks*, 9th Dist. Summit No. 28533, 2017-Ohio-7045, ¶ 15-16.

{¶30} Mr. Stevens has not provided any "citations to the * * * parts of the record" upon which he relies with respect to alleged improper remarks in closing arguments. App.R. 16(A)(7).

He has provided no citations to any pleadings, motions, evidentiary materials, or portions of the transcript that would support his argument that, considering the prosecutor's comments in closing arguments, a mistrial should have been granted. "Where an appellant fails to develop an argument in support of his assignment of error, this Court will not create one for him." *Franks* at ¶ 16, citing *State v. Harmon*, 9th Dist. Summit No. 26426, 2013-Ohio-2319, ¶ 6, citing App.R. 16(A)(7) and *Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998).

{¶31} For the reasons set forth above, Mr. Stevens's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

**THE TRIAL COURT ABSED ITS DISCRETION WHEN IT DENIED APPELLANT'S MOTION TO CONTINUE TRIAL[.]**

{¶32} Mr. Stevens argues in his second assignment of error that the trial court abused its discretion when it denied his motion to continue the trial. We disagree.

{¶33} The record establishes that, on the day of trial, defense counsel moved for a continuance of trial to review "newly developed information." The "newly developed information" counsel wanted to review was that "the victim of the crime in [a] North Carolina [case] is the same victim here." Defense counsel wanted time to investigate this and explore "whether the mother had induced the child to make up these allegations against Mr. Stevens * * *." Defense counsel speculated that there could be exculpatory information in the CARE center interview of the out-of-state case relating to the instant case.

{¶34} The State opposed the requested continuance and responded that the allegations in this matter occurred when D.G. was 11, and the new allegations against a separate individual occurred when D.G. was 14. The allegations were separated by almost three years in time and involved two separate alleged perpetrators. The assistant prosecutor argued that "[w]e have no

reason to believe that the current allegations in North Carolina have anything to do with our trial here. We believe that any subsequent allegations are irrelevant and not a basis for a continuance."

{¶35} In denying Mr. Stevens's motion for continuance, the trial court stated that it was "not going to continue this trial based on something that happened two years and nine months later." The trial court noted that Mr. Stevens's request "is presupposing that this victim is, on one hand, going to come into this court and testify one way and in North Carolina going to tell them that she was put up to this. And it just doesn't - - I don't follow the logic in it and I don't believe that it warrants a continuance in this case."

{¶36} The Ohio Supreme Court has held that "[t]he grant or denial of a continuance is a matter that is entrusted to the broad, sound discretion of the trial judge." *State v. Unger*, 67 Ohio St.2d 65 (1981), syllabus. In making its decision, the trial court must consider and weigh all competing considerations. *Id.* at 67. The trial court must balance any potential prejudice to the defendant against the court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice. *Id.* at 67. When reviewing a decision that has been entrusted to the discretion of the trial court an appellate court may not substitute its judgment for that of the trial court. *State v. Finnerty*, 45 Ohio St.3d 104, 107 (1989).

{¶37} A trial court's decision to grant or deny a continuance is reviewed under an abuse of discretion standard. *State v. Perry*, 9th Dist. Lorain No. 00CA007634, 2001 WL 123462, *3 (Feb. 14, 2001), citing *Unger* at 67. Abuse of discretion, as previously set forth, connotes more than an error of law or judgment, but implies that the judgment can be characterized as unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

{¶38} Mr. Stevens argues that, in requesting a continuance, his attorney wanted time to review the additional evidence and information "to determine whether any information could be

exculpatory for his client before going forward in this matter." Mr. Stevens points out that a specific time frame for the requested continuance was never mentioned; that, while the case had been pending for a significant amount of time when it went to trial, "most of that time was due to Covid regulations and not any specific actions of the defendant[,]" and, "[t]here was no discussion of any inconvenience to the litigants." Mr. Stevens argues that the requested continuance was reasonable and necessary and that "a blanket denial, without any specific findings of a detriment to others is an abuse of discretion." We disagree.

{¶39} Mr. Stevens requested a continuance on the day of trial. As this Court has recognized, a continuance at this late juncture would cause inconvenience to the State, the witnesses, and the court. *State v. Petty*, 9th Dist. Summit No. 19611, 2000 WL 1257802, *2 (Sept. 6, 2000). Defense counsel requested a continuance to review additional information that occurred almost three years later between D.G. and another individual in a different state. Defense counsel offered no basis for his theory that D.G.'s mother induced the child to fabricate the allegations or coached the child. Defense counsel merely speculated that there could be exculpatory information in the CARE center interview regarding the allegation against the alleged perpetrator in the unrelated case.

{¶40} Based on a review of the record, we cannot say that the trial court abused its discretion in denying Mr. Stevens's motion for continuance. Mr. Stevens's second assignment of error is overruled.

### ASSIGNMENT OF ERROR III

**THE VERDICT OF THE TRIAL COURT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]**

{¶41} Mr. Stevens argues in his third assignment of error that the trial court's verdict was against the manifest weight of the evidence. We disagree.

**{¶42}** When deciding whether a criminal conviction is against the manifest weight of the evidence, this Court must consider the entire record and "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). A reversal on a manifest weight of the evidence challenge is reserved for exceptional cases where the evidence weighs heavily against the conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

**{¶43}** Having reviewed the record, we cannot conclude that this is the exceptional case where the evidence weighs heavily against Mr. Stevens's conviction. *See Otten* at 340. D.G. testified that, in June of 2019 when she was 11 years old, she spent the night at Mr. Stevens's home with her siblings. D.G. testified that Mr. Stevens "carried me to his bed and then like - - he like started playing with my butt and my boobs and stuff. And then he had pulled down my pants and started playing with my vagina." D.G. testified that Mr. Stevens inserted his finger into her vagina. D.G. also testified that Mr. Stevens's penis "didn't go in, but like it was sliding across I guess."

**{¶44}** D.G. further testified that she awoke in Mr. Stevens's bed the next morning and that, at that time, Mr. Stevens's was again "like playing with my butt and boobs and stuff." According to D.G., Mr. Stevens "tried to put his penis inside of me and it didn't go in."

**{¶45}** D.G. acknowledged that, according to the police report, she reported that Mr. Stevens entered the room that she was in and not that he took her to his room as she testified to in court.

**{¶46}** The jury heard testimony from the social worker who interviewed D.G. at the CARE center; D.G.'s mother; the investigating detective; the forensic scientist at the Ohio Bureau

of Criminal Investigation; and a doctor at Akron Children's Hospital. The doctor testified as to D.G.'s medical records from CARE, which included D.G's report of vaginal digital penetration and the method of evidence collection for the sexual assault kit. The doctor testified that D.G. reported that the assailant's penis contacted her vagina, but "[n]o vaginal penetration with penis occurred." D.G.'s vaginal swabs were positive for phosphatase activity, which is found in large quantities with semen and is a positive test for semen, and Mr. Stevens could not be excluded as a contributor. D.G.'s perianal swabs were negative for acid phosphatase. Mr. Stevens's DNA could not be excluded from the sperm fraction collected from D.G.'s vaginal swabs and underwear.

{¶47} In addition to testifying on his own behalf, Mr. Stevens's called two witnesses at trial. Friend A.C. testified that she picked up Mr. Stevens's children from a pool party and drove them back to Mr. Stevens's house. A.C. testified that she stayed at Mr. Stevens's house for "[m]aybe like two hours, three hours" after the children were sent to bed.

{¶48} Girlfriend testified that she arrived home around midnight, that Mr. Stevens was inebriated when she arrived home, and that the children were upstairs. According to Girlfriend's testimony, she went to sleep with Mr. Stevens, who fell right to sleep. Girlfriend did not believe that Mr. Stevens's got up during the night.

{¶49} Mr. Stevens also testified. Mr. Stevens denied all D.G.'s allegations.

{¶50} The jury was free to believe D.G.'s testimony. *See State v. Clark*, 9th Dist. Wayne No. 14AP0002, 2015-Ohio-2978, ¶ 24. As the trier of fact, the jury was in the best position to judge D.G.'s credibility, as well as the credibility of the other witnesses, and to evaluate their testimony accordingly. *See State v. Simmons*, 9th Dist. Lorain No. 18CA011262, 2020-Ohio-614, ¶ 10. The forensic scientist testified that there were "two contributors" to the DNA obtained from the rape kit. The contributors were D.G. and "also a male DNA profile developed." The fact that

this "male DNA profile was consistent with Robin Stevens, Jr.," could have been taken by the jury as evidence of Mr. Stevens's guilt.

{¶51} "A conviction is not against the manifest weight of the evidence merely because there is conflicting evidence before the trier of fact." *State v. Haydon*, 9th Dist. Summit No. 19094, 1999 WL 1260298, *7 (Dec. 22, 1999). Likewise, "[a] verdict is not against the manifest weight of the evidence because the finder of fact chose to believe the State's witnesses rather than the defendant's version of the events." *State v. Martinez*, 9th Dist. Wayne No. 12CA0054, 2013-Ohio-3189, ¶ 16. Upon review, Mr. Stevens has not shown that this is the exceptional case where the jury lost its way by convicting him. *See Otten*, 33 Ohio App.3d at 340. Accordingly, his third assignment of error is overruled.

III.

**{¶52}** Mr. Stevens's assignments of error are overruled. The judgment of the Summit County Court of Common pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

SCOT STEVENSON
FOR THE COURT

HENSAL, P. J.
CARR, J.
CONCUR.

APPEARANCES:

ANGELE KILLE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.