JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, James Marcinick, appeals from the judgment of conviction after the trial court found him guilty of 10 counts of gross sexual imposition and imposed concurrent sentences resulting in a three-year prison term. Appellant raises six assignments of error for review, challenging both the weight and sufficiency of the evidence and asserting that the trial court committed prejudicial error in its handling of evidentiary matters. Following a review of the record and for the reasons stated below, we affirm appellant's conviction.
 {¶ 2} The charges against appellant arose after his five-year-old step-grandson, LM, disclosed to a social worker that appellant had touched him sexually. During the investigation of the allegations, appellant's son, CM, and stepson, MM, both disclosed that appellant had sexually abused them more than 20 years ago when they were young children growing up in appellant's home.[1]
 {¶ 3} LM first disclosed the sexual abuse while living with his mother and stepfather (CM) in Belgium, where CM was stationed with the U.S. Army. During this time, LM was going to a preschool in Belgium. LM was removed from the preschool after an incident in which some of the children knocked him down and he hit his head. After that incident, a parent of one of the children told *Page 4 
LM's mother that LM had been touching some of the children inappropriately. LM's mother asked LM about this and he told her about playing the "private game" with appellant when they stayed at his house. She took LM to see Sandra Ward, a clinical social worker at Supreme Headquarters Allied Powers Europe ("SHAPE"), NATO military headquarters. SHAPE provides services to American service members and diplomatic personnel and their families.
 {¶ 4} LM made further disclosures to Ward about appellant's abuse. He described playing the "private game" to her and said that "Grandpa Jim" touched LM's "pee pee." He also described the "bottom game" in which Grandpa Jim touched LM's bottom. He told her that Grandpa Jim told him what they were doing was s-e-x and that he was not to tell anyone because if he did, Grandpa Jim would not love him anymore. He described one night when his parents went out and Grandpa Jim closed the curtains in the kitchen and touched LM's private area. He told her that another time appellant held him down, pulled down his pants and took a picture of his "private" and then turned him over and took a picture of his bottom.
 {¶ 5} LM's mother and CM both testified about a particular evening when they were home from Belgium on leave and staying at appellant's home in Valley View, Ohio. Before going out to dinner with a former employer, they dressed LM in his pajamas and put him to bed. When they returned home later that night, *Page 5 
the blinds were closed in the kitchen and LM was wide awake in bed wearing a different pair of pajamas.
 {¶ 6} Following LM's disclosure that appellant had sexually abused him, both CM and MM revealed to the Valley View police detective investigating the allegations that appellant had sexually abused them when they were children.
 {¶ 7} Appellant was indicted on 15 counts and charged as follows: counts 1-3, gross sexual imposition of LM; counts 4-5, rape and gross sexual imposition of CM, when he was under the age of 13; counts 6-13, gross sexual imposition of MM, when he was under the age of 13; count 14, gross sexual imposition of MM when he was over the age of 13; and, count 15, disseminating obscene matter to appellant's daughter, JM, when she was a minor.
 {¶ 8} Appellant waived his right to a jury trial and made a motion for separate trials. The court denied his motion and all of the charges were tried to the bench on January 29, 2007.
 {¶ 9} At trial the state presented testimony from LM, CM, MM, and JM; their mothers; the social worker; the Valley View police detective; and a police computer expert. At the close of the state's case, the trial court granted appellant's Crim. R. 29 motion in part and dismissed count 15. Defendant presented testimony from one witness, an expert who testified to the proper protocol for interviewing children following allegations of sexual abuse. A *Page 6 
the conclusion of the trial, the court found appellant not guilty of rape as charged in count 4, and not guilty of three counts of gross sexual imposition as charged in counts 9, 11, and 13. The court found appellant guilty on all of the remaining counts and imposed concurrent sentences resulting in a three-year prison term. This appeal followed.
 I {¶ 10} For his first assignment of error, appellant states: "The testimony of Sandra Ward, a social worker in Belgium, violated the appellant's right under the Sixth and Fourteenth Amendments of the Federal Constitution and Article I, Section 10 of the Ohio Constitution."
 {¶ 11} The court decided to allow Sandra Ward, a clinical social worker located at NATO headquarters in Belgium, to testify from Belgium via live video link. Prior to trial, the state filed a motion to allow the use of the video link. Appellant did not object at that time, and in fact, the motion states: "Counsel for the State has spoken with defense counsel and they have no objection to this Court using the video testimony of Sandra Ward." At trial, appellant made a general objection "as to procedure" but failed to raise a constitutional challenge on the record.
 {¶ 12} Appellant asserts on appeal that the trial court's decision to allow Ward to testify from Belgium via a live video link violated his constitutional right *Page 7 
to confront his accusers "face-to-face." He further asserts that moving the trial to the court conference room to allow the live video link violated his right to a public trial. We disagree.
 {¶ 13} The Sixth Amendment to the United States Constitution provides, "[i]n all criminal prosecutions the accused shall enjoy the right * * * to be confronted with the witnesses against him." Section 10, Article I of the Ohio Constitution provides that "the party accused shall be allowed * * * to meet the witnesses face to face * * *; but provision may be made by law for the taking of the deposition by the accused or by the state, to be used for or against the accused, of any witness whose attendance cannot be had at the trial, always securing to the accused means and the opportunity to be present in person and with counsel at the taking of such deposition, and to examine the witness face to face as fully and in the same manner as if in court. * * *"
 {¶ 14} In Maryland v. Craig (1990), 497 U.S. 836, the United States Supreme Court held that "the Confrontation Clause reflects a preference for face-to-face confrontation at trial, a preference that must occasionally give way to considerations of public policy and the necessities of the case." Id. at 849. In holding that the right to confrontation is not absolute, the court detailed a number of important reasons for that right, including: 1) the giving of testimony under oath; 2) the opportunity for cross-examination; 3) the ability of the *Page 8 
factfinder to observe demeanor evidence; and 4) the reduced risk that a witness will wrongfully implicate an innocent defendant. Id. at 845-46. The court found, "the central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." Id.
 {¶ 15} This reasoning has been applied by federal courts to permit the use of two-way video conferencing during trial. In United States v.Gigante (C.A.2, 1999), 166 F.3d 75, 81, the Second Circuit held: "Upon a finding of exceptional circumstances, such as were found in this case, a trial court may allow a witness to testify via two-way closed-circuit television when this furthers the interest of justice." The court found presenting the testimony of a former Mafia member in the Federal Witness Protection Program via two-way closed circuit television did not violate defendant's confrontation right, noting:
 {¶ 16} "The closed-circuit television procedure utilized for [the witness's] testimony preserved all of these characteristics of in-court testimony: [the witness] was sworn; he was subject to full cross-examination; he testified in full view of the jury, court, and defense counsel; and [the witness] gave this testimony under the eye of [defendant] himself. [Defendant] forfeited none of the constitutional protections of confrontation." Id. at 80. But, see, U.S. v. Yates, *Page 9 438 F.3d 1307 (C.A.11, 2006) (holding that the use of two-way video conferencing violates the confrontation clause).
 {¶ 17} In Harrell v. State (1998), 709 So.2d 1364, the Florida Supreme Court addressed the question of whether the admission of trial testimony through use of a live satellite transmission violated the United States or Florida Constitutions where the witnesses resided in a foreign country and were unable to appear in court. Although the court found no error in the trial court admitting the testimony under the facts of the case, it refused to develop a per se rule allowing the unrestrained use of such procedure.
 {¶ 18} Instead, the court followed the two-part analysis fromCraig to determine whether the satellite procedure qualified as an exception to the confrontation clause. "To qualify as an exception, the procedure must (1) be justified, on a case-specific finding, based on important state interests, public policies, or necessities of the case and (2) must satisfy the other three elements of confrontation — oath, cross-examination, and observation of the witness's demeanor." Id. at 1369, citing Craig, 497 U.S. at 849-51. The Florida court noted the important state interest in resolving criminal matters in a manner which is both expeditious and just, and then determined that the satellite procedure preserved the constitutional safeguards of the confrontation clause. Id. at 1371. See, also, State v. Sewell (1999), 595 N.W.2d 207
(presentation through *Page 10 
interactive television of testimony of a witness who was medically unable to be physically present in the courtroom did not violate appellant's confrontation right).
 {¶ 19} The Ohio Supreme Court has held that, "[e]ven in criminal law, the right to confrontation is not absolute." Ohio Ass'n. of Pub. Sch.Employees v. Lakewood City Sch. Dist. (1994), 68 Ohio St.3d 175, 179. InState v. Self (1990), 56 Ohio St.3d 73, the court determined that R.C. 2907.41, which permits the use of a child sexual abuse victim's videotaped deposition at trial in place of live testimony, does not violate Ohio or federal confrontation clauses. The court stated that "literal face-to-face confrontation is not the sine qua non of the confrontation right." Id. at 77. The court reasoned:
 {¶ 20} "Though our Constitution uses the specific phrase `face to face,' that phrase has not been judicially interpreted at its literal extreme. This is because the purpose of the `face to face' clause of the Ohio Constitution (as well as the parallel provision of theSixth Amendment) is to guarantee the opportunity to cross-examine and the right to observe the proceeding. Taking the phrase `face to face' to its outer limits, one could argue that a witness who looks away from the defendant while testifying is not meeting the defendant `face to face.' As we have indicated, a criminal defendant is ordinarily entitled to a physical confrontation with the accusing witnesses in the courtroom. Yet, the value which lies at the core *Page 11 
of the Confrontation Clauses does not depend on an `eyeball to eyeball' stare-down. Rather, the underlying value is grounded upon the opportunity to observe and to cross-examine. The physical distance between the witness and the accused, and the particular seating arrangement of the courtroom, are not at the heart of the confrontation right." Id. at 79.
 {¶ 21} The court concluded that, "[w]hile closed-circuit television and videotape recording did not exist when the Ohio (or federal) Constitution was written and adopted, these new technologies, when employed in accord with R.C. 2907.41, provide a means for the defendant to exercise the right of cross-examination and to observe the proceedings against him with the same particularity as if he and the witness were in the same room." Id.
 {¶ 22} Applying the reasoning from the Craig, Harrell, andSelf decisions, and considering the new technology developed sinceSelf was decided, we find that under the narrow and specific facts of this case, the use of the live video link to allow the state's witness to testify from Belgium, did not violate appellant's confrontation right. The state demonstrated the unavailability of the witness and the admissibility of the testimony. The live two-way link preserved the reliability elements of confrontation: the witness testified under oath; was subject to cross-examination; and, the trial court and appellant could observe the witness' demeanor while testifying. We find no error in admitting this testimony. *Page 12 
 {¶ 23} Appellant also argues that moving the trial from the courtroom to the conference room closed the trial to the public because the public would have no notice that the trial was going on in the conference room. Appellant failed to raise this specific objection at trial. Appellant also fails to support his argument with any reference to the record demonstrating that the court closed the trial to the public, or that members of the public were denied notice of the move to the conference room. The record shows that at the close of trial on June 30, 2007, the trial court announced from the bench that when the trial reconvened in the morning, it would be on the 12th floor, rather than in the courtroom. The state asserts that members of the public, specifically JM and LM's maternal grandparents, were present in the conference room when Ward testified. Therefore, we find no violation of appellant's right to a public trial. Appellant's first assignment of error is overruled.
 II {¶ 24} Appellant's second assignment or error states: "The trial court's denial of the motion for separate trials violates Due Process of the federal constitution and Crim. R. 14."
 {¶ 25} Appellant argues that because this case involves three different people in three distinct time frames he was entitled to three separate trials. We disagree. *Page 13 
 {¶ 26} Crim. R. 8(A) governs joinder of offenses and provides as follows:
 {¶ 27} "Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct."
 {¶ 28} Generally, "joinder and the avoidance of multiple trials is favored for many reasons, among which are conserving time and expense, diminishing the inconvenience to witnesses and minimizing the possibility of incongruous results in successive trials before different juries." State v. Torres (1981), 66 Ohio St.2d 340, 343. However, if it appears that a defendant or the state would be prejudiced by the joinder of offenses, Crim. R. 14 permits the trial court to grant a severance of trials. For an appellate court to reverse a trial court ruling denying severance, the defendant must demonstrate that the trial court abused its discretion. State v. Lott (1990), 51 Ohio St.3d 160, 163.
 {¶ 29} "A defendant * * * under Crim. R. 14 has the burden of affirmatively showing that his rights were prejudiced; he must furnish the trial court with sufficient information so that it can weigh the considerations favoring joinder against the defendant's right to a fair trial, and he must demonstrate that the *Page 14 
court abused its discretion in refusing to separate the charges for trial." Id. (citation omitted).
 {¶ 30} A prosecutor can use two methods to negate such claims of prejudice. Under the first method, the "other acts" test, the state demonstrates that it could have introduced evidence of the other crimes under the "other acts" portion of Evid. R. 404(B), if the two crimes had been severed for trial. Under the second method, the "joinder" test, the state is merely required to show that evidence of each crime joined at trial is simple and direct. Id.
 {¶ 31} "If the state can meet the joinder test, it need not meet the stricter `other acts' test. Thus, an accused is not prejudiced by joinder when simple and direct evidence exists, regardless of the admissibility of evidence of other crimes under Evid. R. 404(B)."State v. Franklin (1991), 62 Ohio St.3d 118, 123.
 {¶ 32} Appellant argues that he was unfairly prejudiced by the joint trial of multiple offenses involving multiple victims.[2] Appellant relies on the Ninth District decision in State v. Quinones, Lake App. No. 2003-L-015, 2005-Ohio-6576, in which the appellate court found the joinder of offenses relating to allegations of sexual abuse by two child victims to be improper. The court found *Page 15 
that the jury could readily confuse the evidence regarding one child victim's allegations with the evidence of another child victim. Additionally, the court found the presentation of witnesses further mingled the evidence in the case making it extremely difficult for a jury to keep the allegations separate when rendering the verdicts.
 {¶ 33} We find Quinones to be distinguishable. The issues in that case are not present here. In the instant case the evidence relating to each victim was simple and direct. The victim's identities, one child and two adults, are easily distinguishable from each other. The case was tried to the court and not a jury. There is no indication from the record that the trial court confused the evidence as to the different counts or that it was influenced by the cumulative effect of the joinder. In fact, the trial court verdict, finding appellant not guilty of count 4 involving CM, not guilty of counts 9, 11, and 13 involving MM, and guilty of all other charges, demonstrates that it considered each charge separately.
 {¶ 34} Appellant has failed to demonstrate prejudice or that the trial court abused its discretion, therefore, his second assignment of error is overruled.
 III {¶ 35} Appellant's third assignment of error states: "The trial court erred in finding LM competent to testify in violation of Evidence Rule 601 and the Due Process Clause of the Fourteenth Amendment." *Page 16 
 {¶ 36} Ohio Rule of Evidence 601(A) provides:
 {¶ 37} "Every person is competent to be a witness except: (A) Those of unsound mind, and children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly."
 {¶ 38} The trial judge has a duty to conduct a voir dire examination of a child under 10 years of age to determine the child's competency to testify. State v. Frazier (1991), 61 Ohio St.3d 247, 250-51. In determining whether a child under 10 is competent to testify, the trial court must take into consideration: (1) the child's ability to receive accurate impressions of fact or observe acts about which they will testify; (2) the child's ability to recollect those impressions or observations; (3) the child's ability to communicate what was observed; (4) the child's understanding of truth and falsity; and (5) the child's appreciation of the responsibility to be truthful. Id. at 251. The determination of competency is within the trial judge's sound discretion. Id.
 {¶ 39} Prior to allowing LM to testify as a witness, the trial court conducted a competency hearing in chambers. The court observed LM respond to questions on direct and cross-examination, and also asked its own questions of him. At the conclusion of the questioning, the trial court found that LM was competent to testify. *Page 17 
 {¶ 40} Appellant's assertion that the trial court did not take into account the child's understanding of truth and falsity or his appreciation of the responsibility to be truthful is not supported by the record. The transcript demonstrates that LM knew the date of his birth and that he was "five and a half." He understood that if the prosecutor said he was wearing a purple tie, it was a lie. He knew that when the prosecutor said his tie was really red with blue stripes, it was the truth. He knew that telling the truth was good and that telling a lie was not good. He said if he told a lie he would be sent up to his room.
 {¶ 41} Additionally, LM was able to recall and describe the incident in which he was knocked down at school by three children and bumped his head hard on the ground. He recalled going to talk to the social worker, although he did not know what a social worker was. He described Ms. Ward's office and remembered that he was wearing his Spiderman costume on one occasion when he went to see her. He described playing games with her and drawing pictures. The evidence in the record supports the trial court's finding that he was competent to testify. Appellant's third assignment of error is overruled.
 IV {¶ 42} Appellant's fourth assignment of error states: "The evidence is insufficient to convict the appellant in violation of the federal Constitution." *Page 18 
 {¶ 43} A claim of insufficient evidence invokes due process of the law and raises the question of whether the evidence is legally sufficient to support the verdict as a matter of law. State v. Thompkins (1997),78 Ohio St.3d 380, 386, 1997-Ohio-52. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v.Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 44} Appellant was indicted for gross sexual imposition against LM, CM, and MM in violation of R.C. 2907.05(A)(1) and(4). This section defines the elements of gross sexual imposition as:
 {¶ 45} "(A) No person shall have sexual contact with another, not the spouse of the offender; cause another not the spouse of the offender, to have sexual contact with the offender; * * * when any of the following applies:
 {¶ 46} "(1) The offender purposely compels the other person, or one of the persons, to submit by force or threat of force.
 {¶ 47} "* * * *Page 19 
 {¶ 48} "(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person."
 {¶ 49} "Sexual contact" means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person. R.C. 2907.01(B).
 {¶ 50} The record contains sufficient evidence to support appellant's convictions for gross sexual imposition. The testimony by LM, his mother, Sandra Ward, and CM establishes that, on more than one occasion, appellant pulled down LM's pants and played the "private game" and the "bottom game," touching LM on his genitals and buttocks.
 {¶ 51} CM testified that when he was 11 or 12-years-old and in fifth grade, appellant climbed into bed with him. He said appellant smelled of alcohol. He said appellant fondled his penis and rubbed himself against his buttocks. CM described a second incident in which appellant got into bed with him and put his penis near CM's mouth. CM stated he briefly put his mouth on appellant's penis before getting up and telling appellant it was "gross."
 {¶ 52} MM testified that when he was eight-years-old, appellant began coming into his bed at night and touching his penis. He said appellant continued doing this until he was in the eighth or ninth grade, right before his parents *Page 20 
divorced. He said appellant smelled of alcohol. He said sometimes he was asleep and sometimes he was awake when appellant came to his bed. He testified that appellant touched him over his pajamas and sometimes he would reach his hand under the pajamas and touch him. He described an incident when he was naked in the shower and appellant tried to get into the shower with him.
 {¶ 53} Viewing this evidence in a light most favorable to the prosecution, the trial court could have found the essential elements of gross sexual imposition involving LM, CM, and MM proven beyond a reasonable doubt. Appellant's fourth assignment of error is overruled.
 V {¶ 54} Appellant's fifth assignment of error states: "The appellant's convictions are against the weight of the evidence."
 {¶ 55} When the court of appeals is presented with an argument that a factual finding is against the manifest weight of the evidence, it must consider the entire record and determine whether the trier of fact lost its way when determining the facts. State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52. Appellant's argument consists of one sentence which states that the convictions are against the weight of the evidence for the same reasons why they were not supported by sufficient evidence. The appellate concepts of manifest weight of the evidence and insufficient evidence are "both quantitatively and qualitatively *Page 21 
different." Id. at paragraph two of the syllabus. Appellant's lack of a separate argument relating to the weight of the evidence constitutes a failure to separately argue an assignment of error, and thus we disregard it pursuant to App. R. 12(A)(2). Appellant's fifth assignment is overruled.
 VI {¶ 56} Appellant's sixth and final assignment of error states: "The cumulative errors deprived the appellant of Due Process in violation of the Fourteenth Amendment of the federal Constitution."
 {¶ 57} Having reviewed each of appellant's assignments of error and found no error, appellant's final assignment of error is overruled and the judgment of the trial court affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 22 
ANTHONY O. CALABRESE, JR., P.J., and PATRICIA ANN BLACKMON, J., CONCUR
[1] In keeping with this court's policy of protecting the identity of child victims, all of the victims in this case will be referred to by initials even though some are now adults.
[2] Appellant asserts that it was out of fear of the prejudicial "spillover" effect of multiple allegations involving multiple victims that he waived his constitutional right to a jury trial. We find the record belies this assertion. Appellant waived his right to a jury on November 2, 2006, nearly two months prior to filing his December 28, 2006 request for separate trials. The trial court did not deny the request for separate trials until February 6, 2007. *Page 1