[Cite as *State v. Thomas*, 2020-Ohio-5379.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                CASE NO. 9-19-73

    v.

JOHNNY THOMAS,                        O P I N I O N

    DEFENDANT-APPELLANT.

---

**Appeal from Marion County Common Pleas Court**
**Trial Court No. 19-CR-0301**

**Judgment Affirmed**

**Date of Decision:   November 23, 2020**

---

APPEARANCES:

    *W. Joseph Edwards* **for Appellant**

    *Nathan R. Heiser* **for Appellee**

**SHAW, P.J.**

{¶1} Defendant-appellant, Johnny Thomas ("Thomas"), brings this appeal from the October 31, 2019 judgment of the Marion County Common Pleas Court sentencing him to an aggregate 72-month prison term after he was convicted in a jury trial of two counts of Trafficking in Heroin within 1,000 feet of a school premises in violation of R.C. 2925.03(A)(1), both felonies of the third degree. On appeal, Thomas argues that his rights under the Confrontation Clause were violated, and that he was denied the effective assistance of trial counsel.

*Background*

{¶2} On June 26, 2019, Thomas was indicted for two counts of Trafficking in Heroin within 1,000 feet of the boundaries of any school premises in violation of R.C. 2925.03(A)(1), both felonies of the third degree. The first count alleged that Thomas sold 1.3 grams of heroin to a confidential informant ("CI") during a controlled buy within 1,000 feet of an elementary school on May 15, 2019. The second count alleged that Thomas sold 5.01 grams of heroin to a CI during a controlled buy within 1,000 feet of an elementary school on May 23, 2019. Thomas pled not guilty to the charges.

{¶3} Thomas proceeded to a jury trial on September 19-20, 2019. At trial the State presented evidence that a controlled buy occurred between a CI and Thomas on May 15, 2019, at a park in Marion that was within 1,000 feet of a school.

To set up the buy, the CI called Thomas while the CI was with Detective Matthew Baldridge in a vehicle near the park. That call was recorded and played for the jury. Detective Baldridge testified that he was familiar with Thomas's voice and that it was Thomas on the phone making the deal for heroin with the CI. Detective Baldridge testified that he also knew Thomas by the street name "Sonny."

{¶4} Before the buy occurred, Detective Baldridge searched the CI and then provided money for the controlled buy. The CI then left Detective Baldridge's vehicle and walked to the park. Shortly thereafter the CI was observed being picked up by a blue minivan. Another officer, Deputy Stacy McCoy, was nearby conducting surveillance and she saw the CI get into the minivan, which was registered to Thomas. Deputy McCoy took surveillance video of the CI at the park and of the CI getting into the minivan.

{¶5} A short time later the CI exited the blue minivan. Another officer at the scene, Lieutenant Chris Adkins, followed the blue minivan and took some pictures of it. After the buy occurred, Lieutenant Adkins passed the driver of the blue minivan and observed Thomas in the vehicle, who he was familiar with and also knew by the name of "Sonny."

{¶6} Meanwhile, the CI returned to Detective Baldridge and handed over what was later tested and determined to be 1.3 grams, plus or minus .04 grams, which contained heroin, acetyl fentanyl, and fentanyl.

{¶7} Detective Baldridge and the CI conducted a second controlled buy on May 23, 2019. Again the CI made a call to Thomas while the CI was with Detective Baldridge in a vehicle near the specified park and that call was recorded and played for the jury. The CI indicated to Thomas that he wanted to purchase more heroin this time and a deal was set up to be conducted at the same park as before. Detective Baldridge searched the CI and outfitted the CI with audio/visual recording equipment.

{¶8} Once the CI exited Detective Baldridge's vehicle, the CI walked around the general area of the park and waited to meet Thomas. Eventually the blue minivan registered to Thomas came and picked him up. A brief, blurry glimpse of a man in the driver's seat can be seen on the camera footage from the CI. The CI was in the vehicle for less than a minute, then he returned to Detective Baldridge with what was later determined to be 5.01 grams, plus or minus .04 grams, which contained heroin and fentanyl.

{¶9} After the CI exited the blue minivan registered to Thomas, Deputy McCoy followed the van until she saw Thomas stop under an overpass. Deputy McCoy saw Thomas get out of the driver's side door. She testified that she did not see anyone else in the van. The CI did not testify at trial in this case.

{¶10} Through cross-examination of the State's witnesses, and through photographs taken by the police, the defense established that there were some

inconsistencies regarding whether anyone else was in the vehicle with Thomas and the CI. For example, regarding the buy conducted on May 23, 2019, Deputy McCoy testified that she did not see anyone else in the minivan when she drove past it, but the CI had told Detective Baldridge that there were other individuals in the van.

{¶11} In addition, Detective Baldridge admitted on cross-examination that while he did search the CI before the controlled buys, it was not a full strip search. Further, through cross-examination the defense established that none of the State's witnesses had eyes on the CI for the entire time during the operation, that none of the State's witnesses actually observed the transaction occur, and that there was no audio or video placed on the CI for the May 15, 2019 controlled buy.

{¶12} Given that the defense seemed to be making an argument through its cross-examination of the State's witnesses that someone else in the blue minivan other than Thomas actually sold the drugs to the CI, the State requested a jury instruction on "complicity," specifically through aiding and abetting. The defense objected to the instruction on complicity but the trial court found that the instruction was appropriate given the evidence presented.

{¶13} The jury returned guilty verdicts on both counts against Thomas as indicted. Thomas was then sentenced to serve 36 months in prison on each count, consecutive to each other, for an aggregate 72-month prison term. A judgment entry

memorializing his sentence was filed October 31, 2019. It is from this judgment that Thomas appeals, asserting the following assignments of error for our review.

**Assignment of Error No. 1**
**Appellant's right under the Confrontation Clause of the Sixth Amendment is violated when testimonial evidence of a confidential informant, who does not testify, is introduced during trial thereby violating his rights under the U.S. and State Constitutions.**

**Assignment of Error No. 2**
**Defendant-Appellant was denied the effective assistance of counsel thereby depriving him of the right to a fair trial under the State and Federal Constitutions.**

*First Assignment of Error*

{¶14} In his first assignment of error, Thomas argues that two of the State's Exhibits, which were used during re-direct of Detective Baldridge, violated the Confrontation Clause because the exhibits contained statements of the CI and the CI did not testify in this matter. Thomas acknowledges that his trial counsel did not object to the exhibits or the testimony related to them; nevertheless he argues that it was plain error to permit the introduction of State's Exhibits 24 and 25, and any testimony related to the exhibits.

Standard of Review

{¶15} Generally, the admission or exclusion of evidence lies within the trial court's discretion, and a reviewing court should not reverse absent an abuse of discretion and material prejudice. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-

2815, ¶ 62, citing *State v. Issa*, 93 Ohio St.3d 49, 64 (2001). An abuse of discretion implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980). "However, we review de novo evidentiary rulings that implicate the Confrontation Clause." *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, ¶ 97. "De novo review is independent, without deference to the lower court's decision." *State v. Hudson*, 3d Dist. Marion No. 9-12-38, 2013-Ohio-647, ¶ 27, citing *Ohio Bell Tel. Co. v. Pub. Util. Comm. of Ohio*, 64 Ohio St.3d 145, 147 (1992).

{¶16} However, because Thomas failed to raise a Confrontation Clause issue with respect to these particular exhibits, he has waived all but plain error. *State v. Shepherd*, 3d Dist. Hardon No. 6-19-02, 2020-Ohio-3915, ¶ 31, citing *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, ¶ 191; *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, ¶ 65. "Crim.R. 52(B) governs plain-error review in criminal cases." *State v. Bagley*, 3d Dist. Allen No. 1-13-31, 2014-Ohio-1787, ¶ 55, citing *State v. Risner*, 73 Ohio App.3d 19, 24 (3d Dist.1991). For this Court to recognize plain error, the error must be an obvious defect in a trial's proceedings, it must have affected substantial rights, and it must have affected the outcome of the trial. *State v. Steele*, 138 Ohio St.3d 1, 2013-Ohio-2470, ¶ 30, citing *State v. Eafford*, 132 Ohio St.3d 159, 2012-Ohio-2224, ¶ 11, citing *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642; *State v. Lynn*, 129 Ohio St.3d 146, 2011-Ohio-2722, ¶

13; Crim.R. 52(B). Moreover, "even when the minimum requirements have been met, a reviewing court should still be conservative in its application of plain-error review, reserving notice of plain error for situations involving more than merely theoretical prejudice to substantial rights." *Steele* at ¶ 30, citing *State v. Long,* 53 Ohio St.2d 91, 94 (1978). "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Long* at paragraph three of the syllabus.

Relevant Authority

{¶17} The Confrontation Clause to the Sixth Amendment of the United States Constitution, made applicable to the states by the Fourteenth Amendment, provides that " '[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *.' " *Crawford v. Washington*, 541 U.S. 36, 42, 124 S.Ct. 1354 (2004), quoting the Confrontation Clause. *See also State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, ¶ 34; *State v. McNeal*, 3d Dist. Allen No. 1-01-158, 2002-Ohio-2981, ¶ 43, fn. 13.

> **The United States Supreme Court has interpreted [the Sixth Amendment right to confrontation] to mean that admission of an out-of-court statement of a witness who does not appear at trial is prohibited by the Confrontation Clause if the statement is testimonial unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness.**

*Maxwell* at ¶ 34, citing *Crawford* at 53-54. The United States Supreme Court "did not define the word 'testimonial' but stated that the core class of statements

-8-

implicated by the Confrontation Clause includes statements 'made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.' " *Id.* at ¶ 35, quoting *Crawford* at 52.

{¶18} "Only testimonial hearsay implicates the Confrontation Clause." *McKelton* at ¶ 185. " '[T]estimonial statements are those made for "a primary purpose of creating an out-of-court substitute for trial testimony." ' " *Id.*, quoting *Maxwell* at ¶ 40, quoting *Michigan v. Bryant*, 562 U.S. 344, 358, 131 S.Ct. 1143 (2011). That is, "[t]o rank as 'testimonial,' a statement must have a 'primary purpose' of 'establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution.' " *Bullcoming v. New Mexico*, 564 U.S. 647, 131 S.Ct. 2705, 2714 (2011), fn. 6, quoting *Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266 (2006). "The key issue is what constitutes a testimonial statement: 'It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause.' " *State v. Hood*, 135 Ohio St.3d 137, 2012-Ohio-6208, ¶ 33, quoting *Davis* at 821. Nevertheless, "[t]here is also no dispute that the Confrontation Clause 'does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.' " *State v. Ricks*, 136 Ohio

St.3d 356, 2013-Ohio-3712, ¶ 18, quoting *Crawford* at 59, and citing *Williams v. Illinois*, 567 U.S. 50, 57-58, 132 S.Ct. 2221 (2012).

Analysis

**{¶19}** In this case, while Detective Baldridge was testifying, defense counsel cross-examined him about the CI. When questioned by defense counsel, Detective Baldridge acknowledged that the CI had prior felony convictions for drug trafficking, and that the CI had a pending felony case that was dismissed after the controlled buys were completed. Detective Baldridge also acknowledged that he had the CI sign a contract and that the CI was working for money in this case.

**{¶20}** Detective Baldridge was also cross-examined about "debriefings" that were held between the detective and the CI immediately following the controlled buys. During those debriefings, the CI claimed he purchased the drugs from Thomas. In addition, during the debriefing between Detective Baldridge and the CI following the May 15, 2019 controlled buy, the CI claimed to have never bought drugs from Thomas before, that he had never seen Thomas sell drugs to other individuals, and that he had never seen Thomas use drugs. Further, the CI also stated there was another person in the vehicle. Defense counsel pointed out that the CI's statement that at least one other person was in the vehicle was contrary to the testimony from one of the officers who observed the minivan after the controlled buy.

{¶21} Then, Detective Baldridge was cross-examined regarding his debrief with the CI after the May 23, 2019, controlled buy. The CI stated that the target was wearing "jeans" and a "tee," but the CI did not mention a hat. Defense counsel pointed out that when the driver of the minivan was photographed shortly after the controlled buy, the driver was wearing a hat, which could conflict with the CI's description of who had sold him the drugs.

{¶22} Defense counsel then asked if the CI was asked the same general questions by Detective Baldridge during the second debriefing, and Detective Baldridge testified that the questions were on a written form, so they were the same questions asked every time, and the questions were filled out by the CI. Defense counsel asked Detective Baldridge about the CI's responses on the written forms, pointing to some inconsistencies in the CI's statements. Detective Baldridge acknowledged that on the form following the May 15, 2019 controlled buy, the CI indicated he had known Thomas for 4-5 weeks and that he knew him from jail, whereas after the May 23, 2019, controlled buy the CI indicated he had known Thomas for a "couple months" and that he knew him from a friend. Defense counsel argued that these statements on the forms on the two different dates were inconsistent.

{¶23} On re-direct, following defense counsel's questioning regarding the debriefing between Detective Baldridge and the CI, the State introduced into

evidence the written forms that the CI had filled out after the May 15, 2019, and May 23, 2019, controlled buys. Many of the questions on the forms had already been covered by defense counsel on cross-examination, but the form also asked such things as "Who did you buy the drugs from?"; "Who did you give the money to?"; and "Who gave you the drugs?" On both forms, the CI responded "Sonny" to all these questions. The forms from each buy, which Detective Baldridge testified were kept in the regular course of business, were introduced into evidence as State's Exhibit 24 and State's Exhibit 25 respectively.

{¶24} On appeal, Thomas now argues that it was plain error to permit the introduction of State's Exhibits 24 and 25 and that it was plain error to permit any of the accompanying testimony related to those exhibits. He contends that the statements, particularly those identifying "Sonny" as the drug trafficker, effectively permitted the CI to testify without taking the witness stand.

{¶25} At the outset of our review, we note that the State correctly argues in its brief to this Court that the testimony about issues contained specifically within the debriefing forms (State's Exs. 24, 25), was initiated and emphasized by the defense on cross-examination, thus "opening the door" to the State on this topic. It is well settled that "a party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make." *State ex rel. Smith v. O'Connor,* 71 Ohio St.3d 660, 663, 646 N.E.2d 1115 (1995).

{¶26} Notwithstanding this point, the evidence that Thomas now finds most objectionable is entirely duplicative of statements made otherwise in the record indicating that Thomas was the individual committing drug trafficking. Thomas complains that State's Exhibits 24 and 25 contain statements that "Sonny" sold the drugs; however, officers testified regarding the set-up to the controlled buy through the phone call with Thomas, the minivan used for the transaction that was registered to Thomas, the observations of Thomas in the minivan after the CI made the purchases, and the knowledge of officers that Thomas went by the street name of "Sonny." Thus the statements on the form are cumulative to other evidence in the record. *State v. Edwards*, 9th Dist. No. 28164, 2017-Ohio-7231, 96 N.E.3d 890, ¶ 42, citing *State v. Williams*, 38 Ohio St.3d 346, 350, 528 N.E.2d 910 (1988) (the erroneous admission of hearsay, cumulative to the testimony of other witnesses at trial, constitutes *harmless* error, a lower standard than the case before us); *State v. Hernon*, 9th Dist. Medina No. 3081–M, 2001 WL 276348, *4 (March 21, 2001) (noting that error in admitting testimony may be harmless beyond a reasonable doubt if it is cumulative); *see also State v. Baskin*, 3d Dist. Allen No. 1-18-23, 2019-Ohio-2071. Because the evidence on the forms is cumulative to other evidence in the record, we could not find error here, let alone plain error.

{¶27} In arguing that his case should be reversed, Thomas cites *United States v. Cromer*, 389 F.3d 662 (6th Cir. 2004), wherein some specific

statements of a CI were found to be testimonial and reversible when the CI did not testify at trial. However, the Sixth Circuit Court of Appeals later acknowledged that violations of the Confrontation Clause are subject to "harmless error" review, and where other testimony satisfies the conviction, an error is harmless. *See U.S. v. Powers*, 500 F.3d 500 (6th Cir. 2007). Ohio Courts have similarly applied a harmless error review when discussing constitutional issues like the Confrontation Clause *when there is an objection to evidence*. *See State v. Hood*, 135 Ohio St.3d 137, 2012-Ohio-6208, ¶¶ 43-50. Harmless error is a lower standard than plain error, and Thomas cannot meet that lower standard, let alone the higher plain error standard due to the nature of the evidence in this case. *See State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, ¶ 15 (stating that harmless error is a standard significantly more favorable to the defendant). Based on the evidence presented we cannot find plain error in this case. Therefore, Thomas's first assignment of error is overruled.

*Second Assignment of Error*

{¶28} In his second assignment of error, Thomas argues that he was denied the effective assistance of counsel. Specifically, he argues that his trial counsel was ineffective for failing to object to the introduction of State's Exhibits 24 and 25 discussed in the previous assignment of error and the testimony accompanying these exhibits.

Standard of Review

{¶29} "To establish a claim for ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that counsel's deficient performance prejudiced him." *State v. Hernandez*, 3d Dist. Defiance Nos. 4–16–27, 28, 2017–Ohio–2797, ¶ 12, citing *State v. Phillips*, 3d Dist. Allen No. 1–15–43, 2016–Ohio–3105, ¶ 11, citing *State v. Jackson,* 107 Ohio St.3d 53, 2005–Ohio–5981, ¶ 133, citing *Strickland v. Washington,* 466 U.S. 668, 687 (1984). The failure to make either showing defeats a claim of ineffective assistance of counsel. *State v. Bradley*, 42 Ohio St.3d 136, 143 (1989), quoting *Strickland* at 697. ("[T]here is no reason for a court deciding an ineffective assistance of counsel claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.").

Analysis

{¶30} We have already determined that there was no outcome-determinative error made in this case in the admission of State's Exhibits 24, 25, and the accompanying testimony. Thus Thomas is unable to demonstrate prejudice in this matter and his assignment of error fails for this reason alone.

{¶31} Nevertheless, it is clear from a review of the record that defense counsel was employing a strategy to attempt to establish 'doubt' in this matter through the use of the evidence contained in State's Exhibits 24 and 25, wherein the

CI made some arguably conflicting statements, including at least one statement that conflicted with the testimony of another officer. We will not find ineffective assistance of counsel based on trial strategy merely because it was unsuccessful. *See also State v. Mohamed*, 151 Ohio St.3d 320, 2017-Ohio-7468, ¶ 18 ("Questionable trial strategies and tactics, however, do not rise to the level of ineffective assistance of counsel.").

**{¶32}** Here, defense counsel had to defend a case where Thomas was heard on the phone setting up a drug deal, his vehicle was observed picking up the CI, Thomas was subsequently observed in the vehicle, and the CI returned from his interactions in the vehicle with drugs essentially in the amount he had agreed to buy on the phone from Thomas. Trial counsel tried to sow doubt where he could and we will not find his strategy ineffective because it was not successful in a case with such substantial evidence establishing Thomas's guilt. For all of these reasons, Thomas's second assignment of error is overruled.

*Conclusion*

**{¶33}** For the foregoing reasons the assignments of error are overruled and the judgment of the Marion County Common Pleas Court is affirmed.

***Judgment Affirmed***

**WILLAMOWSKI and ZIMMERMAN, J.J., concur.**

**/jlr**