[Cite as *State v. Carter*, 2022-Ohio-4559.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                  CASE NO.  8-22-12

    v.

ELI Y. CARTER,                           O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Logan County Common Pleas Court
Trial Court No.  CR 21 03 0051

**Judgment Affirmed**

**Date of Decision:  December 19, 2022**

APPEARANCES:

    *Samuel H. Shamansky* **for Appellant**

    *Eric C. Stewart* **for Appellee**

Case No. 8-22-12

**ZIMMERMAN, P.J.**

{¶1} Defendant-appellant, Eli Y. Carter ("Carter"), appeals the February 8, 2022 judgment entry of the Logan County Court of Common Pleas, General Division, granting the State's request to have a witness testify via a two-way-live-video-conference call. For the reasons set forth below, we affirm.

{¶2} This case stems from Carter's sexual abuse of his adopted daughter, N.C., between the ages of 17-19 and her disclosure of that abuse.[1] On March 9, 2021, the Logan County Grand Jury indicted Carter on three counts of rape in violation of R.C. 2907.02(A)(1), all first-degree felonies and three counts of sexual battery in violation of R.C. 2907.03(A)(5), (B), all third-degree felonies. Carter appeared for arraignment on March 12, 2021 and entered not-guilty pleas.

{¶3} On February 7, 2022, the State filed a motion for witnesses to testify via video, which Carter opposed.[2] The trial court granted the State's motion.[3]

{¶4} On February 9, 2022, Carter's jury trial commenced wherein he was acquitted of the three rape charges (under Counts One, Three, and Five) and the sexual-battery charge (under Count Two). However, Carter was found guilty of the sexual-battery charges (under Counts Four and Six).

---

[1] N.C. was 17 years old at the time of her adoption in 2007, 20 at the time of her disclosure in 2010, and 32 at the time of trial in 2022.

[2] Two witnesses who had previously resided in Logan and Champaign Counties had since relocated, and at the time of trial, both witnesses resided out-of-state.

[3] Even though the trial court granted the State's motion, the State only called one of the witnesses at trial.

-2-

{¶5} On March 18, 2022, the trial court held a sentencing hearing and ordered Carter to serve 30-month prison terms under Counts Four and Six, each, to be served concurrently to one another.

{¶6} Carter filed a timely notice of appeal and raises one assignment of error for our review.

**Assignment of Error**

**The trial court erred by permitting Michael Mullins to testify by remote means utilizing a speech-to-text captioning program in violation of Appellant's rights as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, comparable provisions of the Ohio Constitution, as well as Ohio law and the Ohio Rules of Evidence.**

{¶7} In his sole assignment of error, Carter asserts that he was denied the right to confront a witness against him in violation of the Sixth Amendment to the United States Constitution, Section 10, Article 1 of the Ohio Constitution, and the Rules of Evidence. Specifically, Carter argues that the State did not meet its burden by demonstrating that video conferencing was justified; that one of the witness's testimony was inadmissible because he used unverified software that aided his testimony; and that he was unfairly prejudiced by the admission of unreliable testimony.

*Standard of Review*

{¶8} Generally, a trial court has broad discretion with respect to the admission of evidence. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶

37. Accordingly, we will not disturb the trial court's evidentiary rulings absent an abuse of discretion that produces a material prejudice to the aggrieved party. *State v. Gipson*, 3d Dist. Allen No. 1-15-51, 2016-Ohio-994, ¶ 48, citing *State v. Roberts*, 9th Dist. Summit No. 21532, 2004-Ohio-962, ¶ 14. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in reaching its ruling. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

**{¶9}** However, we review evidentiary rulings that implicate the Confrontation Clause under a de novo standard of review. *See State v. Armour*, 3d Dist. Allen Nos. 1-22-05 and 1-22-06, 2022-Ohio-2717, ¶ 37, citing *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, ¶ 97. "De novo review is independent, without deference to the lower court's decision." *State v. Hudson*, 3d Dist. Marion No. 9-12-38, 2013-Ohio-647, ¶ 27, citing *Ohio Bell Tel. Co. v. Pub. Util. Comm. of Ohio*, 64 Ohio St.3d 145, 147 (1992).

*Analysis*

**{¶10}** Carter raises three arguments in support of his assignment of error the first of which implicates the Confrontation Clause.

*Confrontation Clause*

**{¶11}** "The Confrontation Clause to the Sixth Amendment of the United States Constitution, made applicable to the states by the Fourteenth Amendment,

provides that "'[i]n all criminal prosecutions, the accused shall enjoy the right * * *

to be confronted with the witnesses against him * * *."'" *State v. Thomas*, 3d Dist.

Marion No. 9-19-73, 2020-Ohio-5379, ¶ 17, quoting *Crawford v. Washington*, 541

U.S. 36, 42, 124 S.Ct. 1354, 1359 (2004), quoting the Confrontation Clause.

Section 10, Article I of the Ohio Constitution provides in its pertinent parts:

> In any trial, in any court, the party accused shall be allowed * * * to
> meet the witnesses face to face[] * * *; but provision may be made by
> law for the taking of the deposition by the accused or by the state, to
> be used for or against the accused, of any witness whose attendance
> can not be had at the trial, always securing to the accused means and
> the opportunity to be present in person and with counsel at the taking
> of such deposition, and to examine the witness face to face as fully
> and in the same manner as if in court. * * *.

*See also* Crim.R. 15; R.C. 2945.481.  The similar provisions of Section 10, Article

I of the Ohio Constitution "provide[ ] no greater right of confrontation than the Sixth

Amendment * * *." *State v. Self*, 56 Ohio St.3d 73, 79 (1990).

{¶12} Even though the United States Supreme Court has interpreted the

Confrontation Clause as reflecting a preference for face-to-face confrontation, it has

explained that the preference "'must occasionally give way to considerations of

public policy and the necessities of the case.'" *State v. Marcinick*, 8th Dist.

Cuyahoga No. 89736, 2008-Ohio-3553, ¶ 14, citing *Maryland v. Craig*, 497 U.S.

836, 849, 110 S.Ct. 3157, 3165 (1990).  Thus, the right to confrontation is not

absolute, and the primary concern of the Confrontation Clause is "to ensure the

reliability of evidence against a criminal defendant by subjecting it to rigorous

testing in the context of an adversary proceeding before the trier of fact." *Maryland* at 845, 110 S.Ct. 3157. In holding that the right to confrontation is not absolute, the United States Supreme Court detailed the rationale for that right, including: 1) the giving of testimony under oath; 2) the opportunity for cross-examination; 3) the ability of the factfinder to observe demeanor evidence; and 4) the reduced risk that a witness will wrongfully implicate an innocent defendant. *Id.* at 845-846, 110 S.C.t 3163-3164.

{¶13} Analogously, in interpreting Ohio's confrontation rights, the Supreme Court of Ohio has held that, "[e]ven in criminal law, the right to confrontation is not absolute." *Ohio Ass'n. of Pub. Sch. Employees v. Lakewood City Sch. Dist.*, 68 Ohio St.3d 175, 179 (1994). In *State v. Self*, the Supreme Court of Ohio determined that R.C. 2907.41, which permitted the use of a child sexual abuse victim's videotaped deposition at trial in place of live testimony, does not violate the Ohio or federal confrontation clauses.[4]  56 Ohio St.3d at 73, paragraph one of the syllabus. The court stated that a "literal face-to-face confrontation is not the *sine qua non* of the confrontation right." (Emphasis added.) *Id.* at 77. The court reasoned:

> [t]hough our Constitution uses the specific phrase 'face to face,' that phrase has not been judicially interpreted at its literal extreme. This is because the purpose of the 'face to face' clause of the Ohio Constitution (as well as the parallel provision of the Sixth Amendment) is to guarantee the opportunity to cross-examine and the right to observe the proceeding. Taking the phrase 'face to face' to its

---

[4] Although the General Assembly recodified R.C. 2907.41 as R.C. 2945.481 in 1997, for the issues in this appeal, it is substantially identical to its prior version.

> outer limits, one could argue that a witness who looks away from the defendant while testifying is not meeting the defendant 'face to face.' As we have indicated, a criminal defendant is ordinarily entitled to a physical confrontation with the accusing witnesses in the courtroom. Yet, the value which lies at the core of the Confrontation Clauses does not depend on an 'eyeball to eyeball' stare-down. Rather, the underlying value is grounded upon the opportunity to observe and to cross-examine. The physical distance between the witness and the accused, and the particular seating arrangement of the courtroom, are not at the heart of the confrontation right.

(Internal citation and footnote omitted.) *Id.* at 79. The Supreme Court of Ohio concluded that, "[w]hile closed-circuit television and videotape recording did not exist when the Ohio (or federal) Constitution was written and adopted, these new technologies, when employed in accord with R.C. 2907.41, provide a means for the defendant to exercise the right of cross-examination and to observe the proceedings against him with the same particularity as if he and the witness were in the same room." *Id.* Since *Self*, other Ohio courts have authorized the presentation of testimony via cloud-based-video-conferencing platforms, through Skype and Zoom, under limited circumstances. *See State v. Banks*, 1st Dist. Hamilton No. C-200395, 2021-Ohio-4330, ¶ 14-26; *State v. Castonguay*, 2nd Dist. Darke No. 2021-CA-2, 2021-Ohio-3116, ¶ 33-42.

{¶14} To determine whether an alternative to physical face-to-face confrontation is warranted, Ohio courts have employed a two-prong test set forth in *Self*. *Banks* at ¶ 22; *State v. Howard*, 2d Dist. 28314, 2020-Ohio-3819, ¶ 53; *Castonguay* at ¶ 35. When deciding whether an exception to the Confrontation

Clause is warranted, those appellate courts have concluded that a trial court must first consider whether the procedure is "justified, on a case-specific finding, based on important state interests, public policies, or necessities of the case and[,] * * * [second ensure whether the procedure] satisf[ies] the other three elements of confrontation[:] oath, cross-examination, and observation of the witness' demeanor." *Id.* at ¶ 22, quoting *Howard* at ¶ 53, citing *Marcinick*, 2008-Ohio-3553, at ¶ 14. Hence, we begin by addressing whether or not the "necessities of the case" justified an alternative to face-to-face confrontation.

{¶15} Prior to trial, the State requested the trial court to permit Mullins to testify remotely because he resided in Minnesota. Due to *spikes* in the number of reported Covid cases and the potential for bad weather (in Minnesota and Ohio) at the time of trial, the State argued for the witness to testify remotely. In rendering its decision on the State's motion, the trial court noted that live-video testimony was more commonplace than it was prior to the pandemic. The trial court further noted that, in addition to the Covid pandemic, airline-labor shortages (resulting from the pandemic) and other causes were creating unprecedented travel delays resulting in mass cancellations of airline flights.

{¶16} Here, even if we were to assume without deciding that the possibility of inclement weather was insufficient to warrant an exception for Mullins's video-conferenced testimony, we nevertheless conclude that the trial court's

-8-

determinations were justified on a case-specific finding based upon an important public policy involving the Covid pandemic. Indeed, Carter's memorandum contra to the State's motion detailed Kentucky's, Minnesota's, and Ohio's Covid-case data for a seven-day average. (*See* Doc. No. 75). That data reflected that Minnesota's seven-day average was *more than* three times the Ohio Covid-case average. (*Id.*). Thus, it is evident to us that the trial court considered the needs of the public and the trial court including all staff, the attorneys, and most importantly, members of petit jury, from exposure to Covid. *Banks* at ¶ 24 (holding that "[p]reventing the spread of C[ovid] is an important public policy that may warrant an exception to face-to-face confrontation under appropriate circumstances."), citing *United States v. Donziger*, S.D.N.Y. Nos. 19-CR-561 and 11-CV-691, 2020 WL 5152162, *2 (Aug. 31, 2020).

{¶17} In addition to the foregoing, we recognize this is not an issue of witness convenience, but rather, the trial court's duty to protect those who come and go from the courthouse and to maintain the orderly administration of trial proceedings. *See also State v. Owen*, 3d Dist. Union No. 14-92-34, 1993 WL 128177, *3 (Apr. 26, 1993), citing Crim.R. 1(B); *State v. Harding*, 3d Dist. Marion No. 9-93-8, 1993 WL 312905, *3 (Aug. 9, 1993).

{¶18} Since we reached the conclusion that the combination of the pandemic and resultant airline-labor shortages were sufficient bases to justify the trial court's

determination, we leave the question of whether the possibility of inclement weather is independently sufficient to warrant an exception to a criminal defendant's right to confrontation for another day.

{¶19} Accordingly, we conclude that under the specific facts and circumstances of this case, the use of two-way-live-video-conferencing allowing Mullins to testify from out-of-state, did not violate Carter's right to confrontation. Here, Mullins's two-way-live-video-conference call preserved the reliability elements of confrontation given that he testified under oath; he was subject to cross-examination; and, the jury and Carter could observe his demeanor while testifying. We find no error in admitting this testimony. Hence, there is no merit to the first portion of Carter's argument.

{¶20} Next, we turn the second portion of Carter's argument wherein he asserts that Mullins's remote testimony should have been inadmissible under the Rules of Evidence. Specifically, he argues that Mullins's use of closed-captioning software on his cellphone should have disqualified him as a witness under Evid.R. 601.[5] Further, Carter asserts that because the defense was unable to see or verify

---

[5] Mullins, a hearing-impaired witness, testified on behalf of the State in its case-in-chief. Mullins has a cochlear implant in one ear and wears a hearing aid in the other. "A cochlear implant is a small electronic device that is placed inside a [hearing-impaired person's] ear and provides him or her with a sense of sound." *Dombroski v. WellPoint, Inc.*, 119 Ohio St.3d 506, 2008-Ohio-4827, ¶ 4, fn. 1. A "[h]earing aid", on the other hand, is defined in the Revised Code as "any wearable instrument or device designed or offered for the purpose of aiding or compensating for impaired human hearing, including all attachments, accessories, and parts thereof, except batteries and cords." R.C. 4747.01(A). Simply put, a hearing aid is a small electronic device (with a microphone, amplifier, and speaker) that can be worn in or behind the ear receiving sound, converting the sound waves to electrical signals and amplifying them sending them to the hearing-impaired person's ear through the speaker in the device.

the closed captioning on Mullins's cellphone screen that the admission of his testimony is contrary to law since the closed captioning involved the interpretation of the questions posed.

{¶21} We review Carter's assertions under an abuse of discretion standard of review since the decision to appoint or not to appoint an interpreter and evidentiary determinations are both within the sound discretion of the trial court. *See State v. Muhire*, 2d Dist. Montgomery No. 29164, 2022-Ohio-3078, ¶ 27; *State v. Flores*, 10th Dist. Franklin No. 19AP-405, 2020-Ohio-593, ¶ 11; *State v. Castro*, 2d Dist. Montgomery No. 14398, 1995 WL 558782, *4 (Sept. 20, 1995) citing *State v. Saah*, 67 Ohio App.3d 86, 95 (8th Dist.1990). *See also Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, at ¶ 62; *Gipson*, 2016-Ohio-994, at ¶ 48, citing *Roberts*, 2004-Ohio-962, at ¶ 14.

{¶22} We begin by addressing Carter's arguments regarding the Rules of Evidence. Evid.R. 601(A) provides that "[e]very person is competent to be a witness except as otherwise provided in these rules. Relevant to the facts presented, Evid.R. 601(B)(1) states "[a] person is disqualified to testify as a witness when the [trial] court determines" that he or she is "[i]ncapable of expressing himself or herself concerning the matter as to be understood, either directly or through interpretation by one who can understand him or her[.]" Despite Carter's assertions, Evid.R. 601(B)(1) has no application herein. That is, the facts do not support that

Mullins suffered from any speech-related issue as a result of his hearing impairment. Specifically, the record supports that he is hearing impaired, not speech impaired. Consequently, we find that there is no evidence in the record that Mullins was incapable of expressing himself in response to the questions asked.

{¶23} Next, we turn to Carter's argument related to the Revised Code that also implicate the Rules of Evidence and Rules of Superintendence. *See* Evid.R. 604; Sup. R. 88. R.C. 2311.14 provides in its pertinent parts

> (A)(1) Whenever because of a *hearing*, speech, or other *impairment* a party to or *witness in a legal proceeding cannot readily understand* or communicate, *the court shall appoint a qualified interpreter to assist such person*.
>
> (2) This section is not limited to a person who speaks a language other than English. It also applies to the language and descriptions of any person with a developmental disability who cannot be reasonably understood, or *who cannot understand questioning, without the aid of an interpreter*. The interpreter may aid the parties in formulating methods of questioning the person with a developmental disability and in interpreting the answers of the person.
>
> (B) Before entering upon official duties, the interpreter shall take an oath that the interpreter will make a true interpretation of the proceedings to the party or witness, and that the interpreter will truly repeat the statements made by such party or witness to the court, to the best of the interpreter's ability. If the interpreter is appointed to assist a person with a developmental disability as described in division (A)(2) of this section, the oath also shall include an oath that the interpreter will not prompt, lead, suggest, or otherwise improperly influence the testimony of the witness or party.
>
> * * *.

(Emphasis added.) R.C. 2311.14(A)(1)-(2), (B). *See also* Evid.R. 604; Sup. R. 88.

**{¶24}** Importantly, the record before us is not clear on this issue and since we cannot see Mullins while testifying at trial, we are confined to a static transcript. To us, Mullins's level of hearing impairment was not documented in the record nor is there evidence in the record that Mullins utilized the closed captioning on his cellphone while testifying. Moreover, even if we assume without deciding that he did use the closed-captioning feature, Carter suffered no prejudice because Mullins was instructed by the trial court that he *must* rely on the verbal questions posed and *not the closed captioning* when formulating his answers. (Feb. 10, 2022 Tr., Vol. II, at 201-206). The trial court further instructed Mullins that if he did not hear the question or did not understand the question that he was required to ask the trial court or the attorneys to repeat the question. *Id.*

**{¶25}** In our review, the record supports that Mullins was responsive during his testimony and never requested clarification of the questions he was asked. Moreover, the record is void of any objections from the defense asserting that Mullins was reading questions, rather than, listening to the questions posed. Hence, Carter cannot establish that Mullins could not readily understand the questions posed without the aid of an interpreter nor can he establish that Mullins used closed captioning while testifying.[6] Therefore, this portion of his argument is without merit.

---

[6] Nevertheless, even if we had reached different conclusions, Sup. R. 88 requires the trial court to give primary consideration to the method of interpretation chosen by a witness (in need of a sign language

**{¶26}** In his third argument, Carter synthesizes his prior two arguments and asserts that he is unfairly prejudiced by the admission of Mullins's testimony (under Evid.R. 403(A)) since the verdicts support that the jury relied heavily on this testimony to convict Carter of the two of the sexual-battery charges while acquitting him of the remaining sexual-battery charge and the rapes. We disagree.

**{¶27}** First, the State sought the amendment of the rape charges (under Counts One, Three, and Five) at trial from R.C. 2907.02(A)(1) to R.C. 2907.02(A)(2) deleting the relational element "who is not the spouse of the offender" and adding "purposely compels the other person to submit by force or threat of force". (Feb. 10, 2022 Tr., Vol. II, at 190-193). Notwithstanding Carter's testimony (at trial) that he did not sexually abuse N.C., the State also presented testimony from Kurt Penhorwood that Carter perceived his sexual relationship with N.C. as consensual. (*Id.* at 158, 213-214, 224-225, 251). Hence, the jury simply could have believed that N.C. and Carter were engaging in a consensual-sexual relationship. Indeed, sexual battery under R.C. 2907.03(A)(5) is designed to protect children from adults in positions of authority, and designed to protect the family unit and relationships by criminalizing incest. *State v. Lowe*, 112 Ohio St.3d 507, 2007-Ohio-606, ¶ 10 and ¶ 25 ("This reasoning applies not only to minor children, but to adult children as well. Moreover, parents do not cease being parents–whether

---

interpreter) in accordance with 28 C.F.R. 35.160(b)(2), which includes "closed captioning, including real-time captioning". Sup. R. 88(B)(2); 28 CFR 35.104; 28 C.F.R. 35.160(b)(2).

natural parents, stepparents, or adoptive parents–when their minor child reaches the age of majority").

**{¶28}** Secondly, Carter's arguments are predicated on evidentiary weight and witness-credibility determinations, which are reserved for the trier of fact (i.e., the jury) and are misplaced under this assignment of error since Carter did not argue that his sexual-battery convictions were against the manifest weight of the evidence.

**{¶29}** Lastly, we note that all evidence presented by the State is prejudicial to a criminal defendant since it is offered to prove his or her guilt. *See State v. Skates*, 104 Ohio St.3d 195, 2004-Ohio-6391, ¶ 107. Because we determined that the State met its burden by demonstrating that Mullins's two-way-live-video-conferencing testimony was justified and that the record supports that Mullins relied upon the questions he heard and not the closed-captioning software, we will not say that the probative value of Mullins's testimony as to Carter's statement is substantially outweighed by the danger of unfair prejudice. Thus, this portion of Carter's argument is without merit.

**{¶30}** Accordingly, Carter's assignment of error is overruled.

**{¶31}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**MILLER and SHAW, J.J., concur.**